```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                               :
MARVIN BERNSTEIN, Director,                                    :
Mental Hygiene Legal Service,                                  :
First Judicial Department, and                                 :
MICHAEL B., EUGENE C., and                                     :
EDDIE L., patients at Kirby Forensic                           :
Psychiatric Facility, on behalf of themselves                  :
and on behalf  of all others                                   :
similarly situated,                                            :       05 Civ. 1322 (GEL)
                                                               :       COMPLAINT- CLASS ACTION
                 Plaintiffs,                                   :
                                                               :
        -v.-                                                   :
                                                               :
GEORGE E. PATAKI, in his official capacity as                  :
Governor of the State of New York,                             :
SHARON CARPINELLO, in her official capacity                    :
 as Commissioner of the                                        :
New York State Office of Mental Health,                        :
and EILEEN CONSILVIO,                                          :
in her official capacity as Director of Kirby                  :
Forensic Psychiatric Facility,                                 :
                                                               :
                 Defendants.                                   :
                                                               :
--------------------------------------------------------------X
```

Plaintiffs allege:

## Introduction

1. Plaintiffs Michael B., Eugene C., and, Eddie L. are involuntarily committed psychiatric patients who reside at Kirby Forensic Psychiatric Facility ("Kirby"), a secure psychiatric facility (the more restrictive of the two types of civil psychiatric facilities operated in New York State). These Plaintiffs were placed at Kirby at the direction of the New York State Office of Mental Health ("OMH") after being found unfit to stand trial on criminal charges, as provided by New

York Criminal Procedure Law § 730.40. Plaintiffs challenge the statutory scheme which permits them to be civilly retained at Kirby under New York Mental Hygiene Law § 9.33 after the criminal charges against them have been dropped, because the state is not required to prove the plaintiffs' need for retention in a secure facility, rather than a less restrictive ("non-secure") institution, and because the § 9.33 hearing courts are not permitted to direct the patients' transfer to a non-secure institution, even if the testimony at such a hearing indicates that a patient is not so dangerously mentally ill that he requires secure retention or that his mental illness could be adequately treated in the less-restrictive setting. Plaintiffs contend that the statutory scheme deprives them of their rights to substantive and procedural due process and equal protection, as guaranteed by the United States Constitution.

## Jurisdiction

2. This Action is brought under the Due Process and Equal Protection Clauses of the Constitution of the United States, guaranteed to the citizenry by the Fourteenth Amendment, and 42 U.S.C. § 1983 (The Civil Rights Act of 1871). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), and 28 U.S.C. § 2201.

## Class Action Allegations

3. Plaintiffs seek to maintain this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2). The proposed class consists of all persons retained at Kirby under Mental Hygiene Law ("M.H.L.") § 9.33 who originally entered Kirby as Criminal Procedure Law ("C.P.L.") § 730.40 patients, and all C.P.L. § 730.40 patients whose § 9.33 retention may be sought during the pendency of this action.

4. This action is properly maintainable as a class action pursuant to Rule 23(a) of the Federal

Rules of Civil Procedure because:

(i) joinder of the class members' claims is impracticable, both because the ongoing nature of the challenged practice makes the number of class members likely to grow and change in the course of the action, and because the number of persons involved– approximately 13 at the present time– is so numerous as to make joinder of the claims unnecessarily complicated;

(ii) this action seeks solely to resolve questions of law and fact common to all members of the class;

(iii) the claims of the named individual plaintiffs are typical of the claims of the class in that the named plaintiffs have been subjected to the same challenged procedures as have other class members; and

(iv) the named individual plaintiffs will fairly and adequately represent the interests of the class.

5. This action is properly maintainable as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure in that defendants have acted and refused to act on grounds generally applicable to the class, and declaratory and injunctive relief is appropriate with respect to the class as a whole.

<u>New York Statutory Scheme</u>

6. New York operates two types of civil psychiatric facilities for involuntary patients, described in the state statutory scheme as "secure" and "non-secure" facilities. Secure facilities, including Kirby, replaced the older forensic psychiatric facilities operated by the New York Department of Correctional Services.

7. Patients in secure facilities are subject to greater physical restraints, regardless of their

behavior, than patients in non-secure facilities.

8. Although patients in non-secure facilities are afforded comparatively greater freedom of movement than those in secure facilities, the non-secure facilities are locked and heavily guarded, and the risk of a patient's escape is minimal.

9. Secure facilities are intended for the confinement of the most dangerous individuals (those suffering from "dangerous mental disorders," in the terminology of New York law). Non-secure facilities represent the next step-down level of confinement and are intended for those who, while still considered mentally ill and dangerous, are suffering from less than a "dangerous mental disorder." N. Y. C.P.L. § 330.20 (1)(c); *In the Matter of David B.*, 97 N.Y.2d 267, 278 (2002).

10. New York has recognized that patients have a constitutionally-protected liberty interest in being confined in a non-secure facility, rather than a secure facility, and that a greater stigma is associated with confinement in secure institutions. *Aliza K. v. Ford*, 92 N.Y.2d 500, 507 (1998).

11. When a New York criminal court determines that a person is unfit to stand trial, that court issues an "order of observation" committing that person to the custody of OMH "for care and treatment in an appropriate institution." N.Y. C.P.L. § 730.40(1).

12. Within 24 hours of the issuance of such an order, someone within the OMH designates the particular civil psychiatric facility to which the person will be committed.

13. No hearing or other formal procedure is attendant to this decision, which determines whether the patient will be placed in a secure or a non-secure facility.

14. Once the patient has entered OMH custody, the criminal charges against him may be

dropped, either immediately upon his transfer to OMH custody or, if the district attorney has elected not to pursue an indictment, within 90 days thereafter.

15. Once the criminal charges against him have been dropped, the patient may not continue to be confined in any psychiatric institution unless he meets the minimum criteria for involuntary civil commitment: that is, he must at least be found mentally ill and in need of involuntary care and treatment.

16. The hospital bears the burden of applying for a judicial order of civil retention if it believes that a patient is in need of further involuntary care and treatment.

17. Civil retention is effectuated under M.H.L. § 9.33, and the patient is entitled to a judicial hearing. An initial civil commitment under § 9.33 is valid for up to six months; thereafter, the hospital must make subsequent periodic § 9.33 applications, with attendant judicial review, to authorize the patient's continued retention.

18. Nothing in the text of § 9.33 addresses the question of a patient's commitment to a secure as versus a non-secure, facility.

19. Until August 2003, it was customary for Kirby to plead and prove patients' dangerous mental disorder at every § 9.33 hearing.

20. Likewise, until August 2003, it was customary for courts to direct patients' transfer from Kirby to a non-secure institution when such patients were found to be mentally ill and dangerous, but not suffering from the heightened "dangerous mental disorder."

21. In August 2003, the New York Appellate Division, First Department, ruled that a § 9.33 hearing court lacked jurisdiction to direct a patient's transfer from a secure to a non-secure

facility. *Consilvio v. Michael B.*, 307 A.D.2d 852, 853-54 (1st Dep't 2004). The New York Court of Appeals denied leave to appeal this decision in March 2004. *Consilvio v. Michael B.*, 2 N.Y.3d 701 (2004).

22. Since the *Consilvio* decision, § 9.33 hearing courts are no longer empowered to direct class members' transfer to a non-secure facility, even if the testimony at a § 9.33 hearing indicates that the patient is not so dangerously mentally ill as to require secure retention or that his mental illness could be adequately treated in a less-restrictive setting.

23. The *Consilvio* decision also relieved Kirby of its constitutional burden to prove that these patients require hospitalization in a secure rather than a non-secure setting.

24. The *Consilvio* decision effectively permits patients to be hospitalized in the secure setting even absent any showing that they suffer from a dangerous mental disorder.

25. In contrast to the § 9.33 patients at Kirby, insanity acquittees cannot be confined there (or in any secure facility) unless the state has proven to the court's satisfaction that the patient is suffering from a dangerous mental disorder. N.Y. Crim. Proc. L. §§ 330.20(1)(c), (6)-(9).

26. If an insanity acquittee is found to remain mentally ill and dangerous but not to suffer from the heightened "dangerous mental disorder," the court will direct his transfer to a non-secure setting.

Parties

Plaintiff Marvin Bernstein

27. Plaintiff Marvin Bernstein is the Director of the New York State Mental Hygiene Legal Service (MHLS), First Judicial Department. MHLS is an agency mandated pursuant to M.H.L. § 47.03 to provide legal services and assistance to all patients in the custody of the OMH.

MHLS is statutorily mandated "[t]o initiate and take any legal action deemed necessary to safeguard the right of any patient to protection from abuse or mistreatment." M.H.L. § 47.03(e). As Director, Marvin Bernstein is responsible for MHLS's compliance with its mandate.

<u>Plaintiff Michael B.</u>

28. Plaintiff Michael B. is a 30-year-old patient at Kirby. Mr. B. was assigned to Kirby by OMH in July 2002 following a criminal court's determination that he was unfit to proceed to trial on misdemeanor charges. The criminal charges against him were terminated and he was converted to the status of an involuntary civilly committed psychiatric patient upon his arrival at Kirby.

29. In November 2002, a hearing was held on the hospital's application for Mr. B.'s continued involuntary civil retention under M.H.L. § 9.33. At that hearing, his treating psychiatrist testified that Mr. B.'s condition could adequately be managed in a non-secure setting. The § 9.33 hearing court directed Mr. B.'s transfer to a non-secure setting; however, that decision was later overturned by the Appellate Division in *Consilvio*, which held that the hearing court lacked jurisdiction to direct such a transfer.

30. Michael B.'s subsequent § 9.33 periodic review hearing was held on December 29, 2004. Again, his treating psychiatrist testified that Mr. B.'s condition could adequately be managed in a non-secure facility. Based on this testimony, the hospital initially stipulated in open court that Mr. B. would be transferred to the non-secure setting. Thereafter, the hospital sought to withdraw its stipulation, which the court refused to permit; the hospital has filed a notice of appeal from this decision, and its appeal is currently pending in the Appellate Division.

31. Despite the recommendations of Mr. B.'s treatment team, Kirby continues to oppose his transfer to a non-secure hospital. To date, there has never been a judicial determination that

Michael B. has a dangerous mental disorder requiring secure retention.

Plaintiff Eugene C.

32. Plaintiff Eugene C. is a 59-year-old patient at Kirby. Mr. C. was assigned to Kirby by OMH in July 2004 following a criminal court's determination that he was unfit to stand trial on charges of assault, resisting arrest, and disorderly conduct. When he had not been found fit within 90 days, the criminal charges against him were terminated.

33. In October 2004, Kirby applied to have Mr. C. retained as an involuntary civil psychiatric patient, pursuant to M.H.L. § 9.33. While acknowledging that Mr. C. "ha[d] not demonstrated dangerous behavior since his admission to Kirby," his doctors opined in the § 9.33 application that Mr. C. remained in need of inpatient psychiatric treatment and should remain at Kirby.

34. Based on *Consilvio*, the question of transfer to a non-secure facility was not an issue before the § 9.33 court. Mr. C. consented to an additional six months' retention, acknowledging his continuing need for inpatient psychiatric treatment, but not his need to remain in a secure facility.

35. Kirby has never alleged or proved that Mr. C. suffers from a dangerous mental disorder requiring secure retention.

36. Based on the *Consilvio* decision, Kirby will never have the burden of proving that Mr. C. has a dangerous mental disorder, and no § 9.33 hearing court will ever be able to direct Mr. C.'s transfer to a less-secure setting.

Plaintiff Eddie L.

37. Plaintiff Eddie L. is a 31-year-old patient at Kirby. Mr. L. was admitted to Kirby in November 2004 based on a criminal court's determination that he was unfit to stand trial. At the present time, his fitness has not been restored.

38. If Mr. L. has not regained fitness within 90 days of his admission, Kirby may seek to have him committed as an involuntary civil psychiatric patient, pursuant to M.H.L. § 9.33.

39. Based on *Consilvio* decision, Mr. L. may be civilly committed at Kirby without the hospital alleging or proving that Mr. L. suffers from a dangerous mental disorder.

<u>Defendants</u>

40. Defendant George E. Pataki is the Governor of the State of New York. He is charged with the faithful execution of the laws of the state, including the statutory provisions here at issue. He is sued in his official capacity only.

41. Defendant Sharon Carpinello is the Commissioner of the New York State Office of Mental Health. She is responsible for the operation of the state's mental health facilities and for designating to which facility a M.H.L. § 730.40 patient will be assigned. She is sued in her official capacity only.

42. Defendant Eileen Consilvio is the Director of Kirby Forensic Psychiatric Facility. She is responsible for the day-to-day operations of the facility, including signing the facility's applications to retain patients pursuant to § 9.33. She is sued in her official capacity only.

<u>First Claim</u>

43. Paragraphs 1-42 are repeated and realleged as if fully set forth herein.

44. Plaintiffs have a liberty interest, derived from the substantive aspects of the United States Constitution, in being confined in the less-restrictive of New York's two types of civil mental health facilities.

45. The state statutory scheme, as interpreted by the defendants, creates an unjustifiably high risk of an erroneous deprivation of plaintiffs' liberty interests by failing to require the state to prove

the plaintiffs' need for secure retention and failing to provide adequate review of the decision to confine them in the secure setting.

46. Defendants' failure to provide sufficient procedural safeguards attendant to plaintiffs' confinement at Kirby, a secure facility, violates their due process rights, as guaranteed by Amendment XIV of the United States Constitution.

## Second Claim

47. Paragraphs 1-46 are repeated and realleged as if fully set forth herein.

48. Plaintiffs have a liberty interest in being confined in the least-restrictive treatment setting appropriate to their needs. This liberty interest is derived from the New York State Constitution and from a state regulation, 14 N.Y.C.R.R. § 36.1.

49. The state statutory scheme, as interpreted by the defendants, creates an unjustifiably high risk of an erroneous deprivation of plaintiffs' liberty interests by failing to require the state to prove the plaintiffs' need for secure retention and failing to provide adequate review of the decision to confine them in the secure setting.

50. Defendants' failure to provide sufficient procedural safeguards attendant to plaintiffs' confinement at Kirby, a secure facility, violates their due process rights, as guaranteed by Amendment XIV of the United States Constitution.

## Third Claim

51. Paragraphs 1-50 are repeated and realleged as if fully set forth herein.

52. Plaintiffs have a substantive due process right to conditions of confinement reasonably related to the purpose underlying their detention.

53. Defendants have failed to provide any substantive standard to determine whether plaintiffs

will be placed in a secure or a non-secure facility.

54. Defendants' failure to meet their constitutional burden of proving that secure detention is necessary to the treatment goals underlying plaintiffs' detention suggests that the secure detention is undertaken for an impermissible punitive purpose, in violation of plaintiffs' substantive due process rights, as guaranteed by Amendment XIV of the United States Constitution.

### Fourth Claim

55. Paragraphs 1-54 are repeated and realleged as if fully set forth herein.

56. The New York statutory scheme provides fewer procedural protections to the plaintiffs than to other classes of patients, most notably insanity acquittees, for whom the state must prove dangerous mental disorder as part of both the initial retention hearing and every subsequent periodic review hearing.

57. The state's decision to accord fewer procedural protections to the plaintiffs violates their right to equal protection of the laws, as guaranteed by Amendment XIV of the United States Constitution, because the differential treatment is not substantially related to an important governmental objective.

Prayer for Relief

WHEREFORE, plaintiffs respectfully pray that this court:

(1) issue a declaratory judgment that the challenged statutory scheme, as implemented by the defendants, violates plaintiffs' rights as secured under the Fourteenth Amendment to the United States Constitution;

(2) grant plaintiffs and the class they represent a permanent injunction enjoining the defendants,

their agents, successors, employees, attorneys, assigns and other representatives, and all those acting in concert with them at their direction, from retaining any patient at Kirby pursuant to § 9.33 without proving that the patient suffers from a dangerous mental disorder; and

(3) grant such additional relief as the court deems just and proper.

Dated: New York, New York
      February 3, 2005

                                    MARVIN BERNSTEIN, Director
                                    Mental Hygiene Legal Service, First Dept.
                                        S/Sadie Zea Ishee
                                    By: Stephen J. Harkavy (SH-0586)
                                    Deputy Director
                                    Sadie Zea Ishee (SI-9540)
                                    Staff Attorney
                                    60 Madison Avenue, 2nd Floor
                                    New York, New York 10010
                                    Phone:  (212) 779-1734