UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARVIN BERNSTEIN, Director, Mental
Hygiene Legal Service, First Judicial
Department, and MICHAEL B., EUGENE C.,
and EDDIE L., patients at Kirby Forensic
Psychiatric Facility, on behalf of
themselves and on behalf of all others
similarly situated,

                                    Plaintiffs,

         - against -

GEORGE E. PATAKI, in his official
capacity as Governor of the State of New
York, SHARON CARPINELLO, in her official
capacity as Commissioner of the New York
State Office of Mental Health, and EILEEN
CONSILVIO, in her official capacity as
Director of Kirby Forensic Psychiatric
Facility,

                                    Defendants.

Docket Number
05-CV-1322 (GEL)
(THK)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS COMPLAINT**

ELIOT SPITZER
Attorney General of the State
 of New York
<u>Attorney for Defendants</u>
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8641

March 23, 2005

EDWARD J. CURTIS, JR.
JAMILA BERRIDGE
Assistant Attorneys General
<u>of Counsel</u>

**TABLE OF CONTENTS**

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . 1

    A. Statutory Background . . . . . . . . . . . . . . . . 1

    B. The Named Plaintiffs' Claims . . . . . . . . . . . 3

        1. Michael B. . . . . . . . . . . . . . . . . . 3

        2. Eugene C. . . . . . . . . . . . . . . . . . . 5

        3. Eddie L. . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I    - PLAINTIFFS HAVE NO FEDERAL LIBERTY INTEREST
             PROTECTED BY THE DUE PROCESS CLAUSE THAT
             PREVENTS THEIR COMMITMENT TO A PARTICULAR
             TYPE OF MENTAL HOSPITAL . . . . . . . . . . . . 5

POINT II   - PLAINTIFFS HAVE NO STATE LIBERTY INTEREST
             PROTECTED BY THE DUE PROCESS CLAUSE IN
             PLACEMENT IN A PARTICULAR TYPE OF MENTAL
             HOSPITAL . . . . . . . . . . . . . . . . . . . 8

    A. Plaintiffs Have No State Liberty Interest
       That Allows Them To Avoid Placement In A
       Particular Type Of Hospital . . . . . . . . . . . . 8

    B. The Right Of MHL Article 9 Patients To A
       Hearing Before They Are Placed In A More-
       Restrictive Hospital Does Not Apply To
       Plaintiffs . . . . . . . . . . . . . . . . . . . 10

    C. Assuming Plaintiffs Have A Liberty Interest
       Under State Law, New York's Post-Deprivation
       Process Adequately Protects That Interest . . . . . . 13

**Page**

POINT III  -   PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS
               ARE NOT AFFECTED BY COMMITMENT TO A PARTICULAR
               HOSPITAL BECAUSE THAT COMMITMENT DOES NOT
               "SHOCK THE CONSCIENCE"  . . . . . . . . . . . . . 15


POINT IV   -   PLAINTIFFS' EQUAL PROTECTION RIGHTS DO NOT
               ENTITLE THEM TO JUDICIAL OVERSIGHT OF THEIR
               RETENTION IN A PARTICULAR HOSPITAL  . . . . . . . 18

        A. Plaintiffs Are Not Similarly Situated To
           CPL 330.20 Defendants . . . . . . . . . . . . . . . 19

        B. There Is A Rational Basis For The Alleged Difference
           In Treatment Between CPL 730.40 Defendants
           And CPL 330.20 Defendants . . . . . . . . . . . . . 21

            1. The Rational-Basis Standard Of Review
               Applies To Plaintiffs' Claim . . . . . . . . . 21

            2. New York's Statutory Scheme Satisfies
               Rational-Basis Review  . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases**                                                      **Page**

Addington v. Texas,
    441 U.S. 418 (1979) . . . . . . . . . . . . . . . . . . 7

Albright v. Oliver,
 510 U.S. 266 (1994) . . . . . . . . . . . . . . . . . . . 15

Aliza K. v. Ford,
 92 N.Y.2d 500 (1998) . . . . . . . . . . . . . 11, 12, 14, 24

City of Cleburne v. Cleburne Living Center,
 473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . 18, 22

Charles W. v. Maul,
 214 F.3d 350 (2d Cir. 2000) . . . . . . . . 10, 12, 13, 19, 22

County of Sacramento v. Lewis,
 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . 16

Fetterusso v. State of New York,
 898 F.2d 322 (2d Cir. 1990) . . . . . . . . . . . . . . 21, 22

Heller v. Doe,
 509 U.S. 312 (1993) . . . . . . . . . . . . . . . 22, 23, 25

Johnson v. Newburgh Enlarged Sch. Dist.,
 239 F.3d 246 (2d Cir. 2001) . . . . . . . . . . . . . . . 17

Kentucky Dep't of Corrections v. Thompson,
 490 U.S. 454 (1989) . . . . . . . . . . . . . . . . . . 6, 8

Matter of Consilvio v. Michael B.,
 307 A.D.2d 852 (1st Dep't 2003), appeal dismissed,
 1 N.Y.3d 545 (2003), appeal denied 2 N.Y.3d 701
 (2004) . . . . . . . . . . . . . . . . . . . . . . 4, 14, 18

Matter of Francis S.,
 87 N.Y.2d 554 (1995) . . . . . . . . . . . . . . . . . . 21

Matter of John K. v. Consilvio,
 9 A.D.3d 256 (1st Dep't 2004) . . . . . . . . . . . . . . 14

**Cases** **Page**

O'Connor v. Donaldson,
 422 U.S. 563 (1975) . . . . . . . . . . . . . . . . . . . . . 6

Poe v. Leonard,
 282 F.3d 123 (2d Cir. 2002) . . . . . . . . . . . . . . . . 17

Project Release v. Prevost,
 722 F.2d 960 (2d Cir. 1983) . . . . . . . . . . . . . . . 7, 13

Ritter v. Surles,
 144 Misc.2d 945 (Sup. Ct. Westchester Co. 1988) . . . . . . . 19

Rodriquez v. McLoughlin,
    214 F.3d 328 (2d Cir. 2000) . . . . . . . . . . . 9, 10, 11

Savastano v. Nurnberg,
 77 N.Y.2d 300 (1990) . . . . . . . . . . . . . . . . . . . . 24

Smith v. Half Hollow Hills Cent. Sch. Dist.,
 298 F.3d 168 (2d Cir. 2002) . . . . . . . . . . . . . . . . 17

United States v. Rahman,
 189 F.3d 88 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 17

Vasquez v. Coombs,
 2004 U.S. Dist. LEXIS 22137 (S.D.N.Y. 2004) . . . . . . . . . 1

Velez v. Levy,
 2005 U.S. App. LEXIS 4135 (2d Cir. Mar. 11, 2005) . . . . 6, 13

Vitek v. Jones,
 445 U.S. 480 (1980) . . . . . . . . . . . . . . . . . . . . . 6

Zinermon v. Burch,
 494 U.S. 113 (1990) . . . . . . . . . . . . . . . . . . . . 15

iv

**Statutes**                                                                 **Page**

United States Constitution, Amendment XIV, § 1 . . . . . . 6, 18

Federal Rule of Civil Procedure 12 (b)(6) . . . . . . . . . . 1

New York Civil Practice Law and Rules ("CPLR")
  Article 78 . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 14

New York Criminal Procedure Law ("CPL")
  § 220.15 . . . . . . . . . . . . . . . . . . . . . . . 19, 21
    330.20 . . . . . . . . . . . . . . . . . . 3, 18, 19, 22
    330.20 (1)(c) . . . . . . . . . . . . . . . . . . . . . 2
    330.20 (2) . . . . . . . . . . . . . . . . . . . . . . 20
    330.20 (3) . . . . . . . . . . . . . . . . . . . . . . 20
    330.20 (4) . . . . . . . . . . . . . . . . . . . . . . 20
    330.20 (6) . . . . . . . . . . . . . . . . . . . . 2, 20
    330.20 (7) . . . . . . . . . . . . . . . . . . . . . . 20
    330.20 (8) . . . . . . . . . . . . . . . . . . . . . . 3
    330.20 (9) . . . . . . . . . . . . . . . . . . . . . . 3
    330.20 (10) . . . . . . . . . . . . . . . . . . . . . 23
    330.20 (11) . . . . . . . . . . . . . . . . . . . . 3, 23
    330.20 (12) . . . . . . . . . . . . . . . . . . . . . 23
    330.20 (13) . . . . . . . . . . . . . . . . . . . . . 20
  Article 730 . . . . . . . . . . . . . . . . . . . 12, 13, 19
  § 730.30 (1) . . . . . . . . . . . . . . . . . . . . . . 1
    730.40 . . . . . . . . . . . . . . . 3, 10, 15, 20, 21, 22
    730.40(1) . . . . . . . . . . . 1, 3, 10, 19, 20, 24
    730.40(2) . . . . . . . . . . . . . . . . . . . . . . 20
    730.50 . . . . . . . . . . . . . . . . . . . . . . . . 3
    730.60 (6) . . . . . . . . . . . . . . . . . . . . . . 19

New York Mental Hygiene Law ("MHL")
  Article 9 . . . . . . . . . . . . . . . 3, 4, 8, 10, 13, 19
  § 7.17 . . . . . . . . . . . . . . . . . . . . . . . . . 2
  § 9.27 . . . . . . . . . . . . . . . . . . . . . . . . . 3
  § 9.31 (a) . . . . . . . . . . . . . . . . . . . . . . . 13
  § 9.33 . . . . . . . . . . . . . . . . . . . . . . . . . 4
  § 9.35 . . . . . . . . . . . . . . . . . . . . . . . . . 14
  § 29.15 . . . . . . . . . . . . . . . . . . . . . . 19, 24

New York Penal Law
  § 25.00 . . . . . . . . . . . . . . . . . . . . . . . . 20
  § 40.15 . . . . . . . . . . . . . . . . . . . . . . . . 20

**Page**

Codes, Rules and Regulations of the State of New York("NYCRR"),
 Title 14
 Part 57 . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11
 § 36.1 . . . . . . . . . . . . . . . . . . . . . . . . 8
 § 57.1 . . . . . . . . . . . . . . . . . . . . . . . 2, 24
 § 517 . . . . . . . . . . . . . . . . . . . . . . . . 4
 § 517.4 . . . . . . . . . . . . . . . . . . . . . . . 18
 § 540.1 . . . . . . . . . . . . . . . . . . . . . . . 3
 § 541 . . . . . . . . . . . . . . . . . . . . . . . . 2
 § 541.4 . . . . . . . . . . . . . . . . . . . . . . . 3

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of the defendants GEORGE E. PATAKI, Governor of the State of New York, SHARON CARPINELLO, Commissioner of the New York State Office of Mental Health ("Commissioner" or "OMH"), and EILEEN CONSILVIO, Director of Kirby Forensic Psychiatric Facility ("Director" or "Kirby") in support of their motion for an order pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure dismissing the Complaint dated February 6, 2005 ("Complaint") in this action on the ground that it fails to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

### A. Statutory Background

Plaintiffs Michael B., Eugene C., and Eddie L. ("the named plaintiffs") were criminal defendants in New York State who were charged with misdemeanors or minor felonies and who, after a psychiatric examination, were determined to be unable to stand trial on the charges against them.[1] Complaint, ¶ 1; N.Y. Crim. Pro. Law ("CPL") §§ 730.30 (1), 730.40 (1). As provided by New York law, the criminal courts issued orders committing Plaintiffs

---

[1] Part of the Statement of Facts is drawn from allegations contained in the Complaint. On a motion to dismiss pursuant to FRCP 12 (b)(6), the Court must accept as true the factual allegations contained in the Complaint. Vasquez v. Coombs, 2004 U.S. Dist. LEXIS 22137 at *6-*7 (S.D.N.Y. 2004). This Statement of Facts is intended to assist this Court, and is not a concession by Defendants as to the truth of the allegations contained in the Complaint.

to the custody of the Commissioner of OMH "for care and treatment in an appropriate institution." Complaint, ¶¶ 11, 28, 32, 37.

Among other things, OMH operates twenty-eight hospitals. N.Y. Mental Hyg. Law § ("MHL") 7.17. Seventeen of these hospitals are adult psychiatric centers and two are forensic psychiatric facilities. MHL 7.17. Kirby is one of two forensic psychiatric facilities. Id. These facilities "have the staff and physical surroundings to enable them to offer ... programs and services to patients requiring closer supervision than can be given at other [OMH] hospitals." N.Y. Comp. Codes R. & Regs. ("NYCRR"), tit. 14, § 57.1. OMH has observed that:

> Patients whose behavior is such as to raise the likelihood of their causing harm to others cannot be given the care and treatment they require at such other hospitals since, for the protection of other patients and staff of such hospitals, they must be kept in closed wards and even in seclusion. The Mid-Hudson Psychiatric Center and Kirby Forensic Psychiatric Center with specially trained staff and perimeter security permit freer movement, within institution grounds, of such patients and the possibility of rehabilitation, recreation, and therapies which, because of their need for close supervision, would not be available for them at the other hospitals.

Id.

Patients receiving care and treatment at Kirby often fit one of several categories:

> 1) Criminal defendants who have been found to have committed a crime, but who have been found not responsible for their actions because of mental illness, may be confined at Kirby if a court has found that they have a "dangerous mental disorder." CPL 330.20 (1)(c), (6); 14 NYCRR Part 541. CPL 330.20

2

defendants who have been found to have a dangerous
mental disorder are subject to the court's and District
Attorney's continuing supervision, and may not be
transferred from Kirby unless the court has found that
they no longer have a dangerous mental disorder and has
authorized their transfer. CPL 330.20 (8), (9), (11);
14 NYCRR § 541.4.

2) Criminal defendants who have outstanding felony
charges but who do not have the capacity to stand trial
may receive care and treatment at Kirby in order to
regain capacity for the purpose of standing trial. CPL
730.50; 14 NYCRR § 540.1.

3) Patients committed pursuant to MHL Article 9 who are
too dangerous to be maintained at a less-secure
hospital may be transferred to Kirby. 14 NYCRR Part 57.

4) Incapacitated criminal defendants who were committed
to the Commissioner's custody pursuant to CPL 730.40,
such as the Plaintiffs here, may be placed at Kirby if
the Commissioner believes they can be most
appropriately treated in such a facility.

The Commissioner, in her discretion, designated Kirby as an

appropriate institution for each of the named plaintiffs.

Complaint, ¶ 1.

### B. The Named Plaintiffs' Claims

#### 1. Michael B.

Prior to July, 2002, a criminal court found that Michael B.

did not have the capacity to stand trial on the misdemeanor

charges against him. Id., ¶ 28. The criminal court issued an

order committing him to the Commissioner's custody. Id. He was

placed at Kirby and his status was converted to that of an

involuntary civil patient by means of an MHL 9.27 two-physician

certificate ("2PC"). Id. The two-physician certificate expired

3

after sixty days, and the Director applied for a further retention order pursuant to MHL 9.33. Id., ¶ 29.

In November, 2002, the Supreme Court, New York County (Lucindo Suarez, J.), granted the Director's application but directed that Michael B. be transferred from Kirby to a less-restrictive hospital. Matter of Consilvio v. Michael B., 307 A.D.2d 852 (1st Dep't 2003). The Director appealed so much of the order as directed Michael B.'s transfer.

On August 21, 2003, the Appellate Division, First Department, reversed. Id. It found that in an MHL Article 9 retention proceeding, the hearing court "did not have power to direct that [Michael B.] be transferred from a secure psychiatric facility to a nonsecure facility." Id. The Appellate Division stated that:

> Judicial review of an administrative determination to confine the patient at a secure facility is available either by way of a CPLR article 78 challenge to [OMH's] determination to transfer the patient to a secure facility pursuant to 14 NYCRR part 57, or by way of a CPLR article 78 challenge to [OMH's] denial of the patient's application for an order of transfer from one facility to another pursuant to 14 NYCRR part 517."

Id. at 852-53 (citations omitted).

On December 29, 2004, a judicial hearing was held on the Director's application for an MHL Article 9 order authorizing Michael B.'s continued retention. Complaint, ¶ 30. Plaintiffs do not state the result of the hearing, but from the fact that Michael B. remains at Kirby as of February 3, 2005, id., ¶ 28, it

4

can be inferred that he was retained.

### 2. Eugene C.

Prior to July, 2004, Eugene C. was found to lack capacity to stand trial on charges of assault, resisting arrest, and disorderly conduct. Id., ¶ 32. He was committed to the Commissioner's custody for a ninety-day period and was placed at Kirby. Id. After ninety days, the criminal charges against him were dismissed. Id.

In October, 2004, the Director applied for an order authorizing Eugene C.'s retention. Id., ¶ 33. Eugene C. agreed to a six-month order of retention, and remains at Kirby. Id.

### 3. Eddie L.

Prior to November, 2004, Eddie L. was found to lack capacity to stand trial. Id., ¶ 37. He was committed to the Commissioner's custody for ninety days and was placed at Kirby. Id., ¶¶ 37, 38. Plaintiffs state that if Eddie L. does not regain capacity within ninety days, the Commissioner may seek a court order to retain him and may keep him at Kirby. Id., ¶¶ 38, 39.

### ARGUMENT

### POINT I

**PLAINTIFFS HAVE NO FEDERAL LIBERTY INTEREST PROTECTED BY THE DUE PROCESS CLAUSE THAT PREVENTS THEIR COMMITMENT TO A PARTICULAR TYPE OF MENTAL HOSPITAL**

Plaintiffs' first claim alleges that "Plaintiffs have a liberty interest, derived from substantive aspects of the United

5

States Constitution, in being confined in the less-restrictive of New York's two types of civil mental health facilities." Complaint, ¶ 44. In order to state this claim, Plaintiffs must show "(1) that [they] possessed a cognizable liberty interest, and (2) that [Defendants] deprived [them] of that same liberty without providing process adequate to justify their actions." Velez v. Levy, 2005 U.S. App. LEXIS 4135 at *26 (2d Cir. Mar. 11, 2005) (citations omitted). Protected liberty interests may come from the Due Process Clause or from State law. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The Due Process Clause prevents States from depriving persons of liberty "without due process of law. " U.S. Const., Amend. XIV, § 1.

Plaintiffs do not have a cognizable liberty interest under the Due Process Clause in being placed either in a less-restrictive or more-restrictive type of mental hospital. It is true that commitment to a psychiatric hospital implicates a liberty interest. See Vitek v. Jones, 445 U.S. 480, 491-93 (1980). For example, the Supreme Court has held that a person's confinement to a psychiatric facility without a finding of dangerousness violates that person's "constitutional right to liberty." O'Connor v. Donaldson, 422 U.S. 563, 573, 576 (1975). Nevertheless, in the context of establishing an evidentiary standard for civil commitment, the Supreme Court has noted that:

> The essence of federalism is that states must be free
> to develop a variety of solutions to problems and not

6

> be forced into a common, uniform mold. As the
> substantive standards for civil commitment may vary
> from state to state, procedures must be allowed to vary
> so long as they meet the constitutional minimum.

Addington v. Texas, 441 U.S. 418, 431 (1979).

Although the constitutional right to liberty described by the Supreme Court protects persons from being committed to a mental hospital without due process of law, that right only addresses the fact of commitment, and ensures that a person is not committed without due process. It does not address whether that person should be committed to a more-restrictive or less-restrictive type of mental hospital.

Plaintiffs have already been committed and their liberty is already restricted pursuant to MHL Article 9. Two Plaintiffs have already had court hearings under MHL Article 9 to determine whether their liberty is properly restricted. Complaint, ¶¶ 29, 30, 34. In these hearings one Plaintiff was twice found to have a mental illness, to be in need of retention, and to be a danger to himself or others as a result of his mental illness, which the standard for involuntary retention. Id., ¶¶ 28-31. Another Plaintiff agreed to further involuntary retention. Id., ¶ 34. Notably, MHL Article 9 has long been found by the Second Circuit to meet procedural due process requirements. Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983).

The "substantive aspects of the United States Constitution" to which Plaintiffs refer in their first claim protects them from

7

commitment to a mental hospital without the procedural protections afforded them by the Due Process Clause. However, the United States Constitution does not set limits on every aspect of commitment or mental health treatment that a State may provide. It only ensures that the States do not commit persons with less protection than the Due Process Clause requires. The "substantive aspects" of the Due Process Clause cannot reasonably be interpreted to extend to whether a person is committed to a more-restrictive or a less-restrictive type of mental hospital. For this reason, the first claim should be dismissed.

**POINT II**

**PLAINTIFFS HAVE NO STATE LIBERTY INTEREST PROTECTED BY THE DUE PROCESS CLAUSE TO PLACEMENT IN A PARTICULAR TYPE OF MENTAL HOSPITAL**

The second source of protected liberty interests is State law. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). In their second claim, Plaintiffs argue that they have a protected liberty interest under the New York State Constitution and a state regulation pertaining to discharge and conditional release of patients, 14 NYCRR § 36.1, which is entitled "Statement of philosophy."

**A. Plaintiffs Have No State Liberty Interest That Allows Them To Avoid Placement In A Particular Type Of Hospital**

Under the Second Circuit's holdings, a state-created liberty interest must be created by something more concrete than a

8

statement of philosophy:

> Mere expectations do not necessarily give rise to a
> state-created liberty interest protected by the Due
> Process Clause. A State creates a protected liberty
> interest by placing substantive limitations on official
> discretion. The most common manner in which a State
> creates a liberty interest is by establishing
> substantive predicates to govern official
> decisionmaking and, further, by mandating the outcome
> to be reached upon a finding that the relevant criteria
> have been met. To create a liberty interest, a statute
> or regulation must contain explicitly mandatory
> language, i.e., specific directives to the
> decisionmaker that if the regulations' substantive
> predicates are present, a particular outcome must
> follow.

Rodriguez v. McLoughlin, 214 F.3d 328, 338 (2d Cir. 2000)

(internal punctuation and citations omitted). Plaintiffs can make

no showing of such a scheme, and hence, cannot demonstrate a

State law-derived liberty interest in a particular placement.

As Plaintiffs recognize, when a court commits an

incapacitated criminal defendant to the Commissioner's custody,

the Commissioner is directed only to provide care and treatment

in an appropriate institution. Complaint, ¶ 11, citing CPL 730.40

(1). The Commissioner's determination of what institution is

appropriate for a given criminal defendant's care and treatment

is made "[w]ithin 24 hours of the issuance" of the criminal

court's order." Id., ¶ 12. Plaintiffs state further that, "[n]o

hearing or other formal procedure is attendant to this decision,

which determines whether the [criminal defendant] will be placed

in a secure or a non-secure facility." Id., ¶ 13. Finally,

9

Plaintiffs state that the charges against the incapacitated criminal defendant are not dropped until he or she is transferred to the Commissioner's custody, or within ninety days after the transfer. Id., ¶ 14; see also Charles W. v. Maul, 214 F.3d 350, 354-56 (2d Cir. 2000). Only then may the incapacitated criminal defendant be committed pursuant to MHL Article 9. Id., ¶ 15.

Plaintiffs complain that New York law does not require State officials to prove that they need retention in the more-restrictive hospital before they are placed in that hospital, and that it does not provide them with adequate review of the decision to place them in a more secure setting. Id., ¶ 49. In arguing this, however, Plaintiffs undermine their argument that they have a liberty interest, since it is these substantive limitations and predicates governing official decisionmaking that creates a protected liberty interest. Rodriguez v. McLoughlin, 214 F.3d at 339 (To find a protected liberty interest State law must "expressly require[] the decisionmaker to apply certain substantive predicates in its determination of whether a person may be deprived of the particular interest in question.").

## B. The Right Of MHL Article 9 Patients To A Hearing Before They Are Placed In A More-Restrictive Hospital Does Not Apply To Plaintiffs

Plaintiffs argue that New York State "has recognized that patients have a constitutionally-protected liberty interest in being confined in a non-secure facility, rather than a secure

10

facility .... " Complaint, ¶ 10, <u>citing</u> <u>Aliza K. v. Ford</u>, 92
N.Y.2d 500, 507 (1998). The argument fails because <u>Aliza K.</u> does
not apply to Plaintiffs' situation.

In <u>Aliza K.</u> the New York Court of Appeals found with respect
to the patient at issue there, that "transfer [to a more-
restrictive mental hospital] implicates a liberty interest which
triggers rights to procedural due process." <u>Id.</u> However,
Plaintiffs here are in a different situation than the patient in
<u>Aliza K.</u> The patient in that case was being transferred from a
less-restrictive OMH hospital to a more-restrictive one and
relied on an existing administrative hearing procedure that had
been established precisely to review proposed transfers of
patients from a less-restrictive hospital to a more-restrictive
one. <u>Id.</u> at 506; <u>see also</u> 14 NYCRR Part 57. Under this procedure,
if the transfer was approved after the administrative hearing,
the transfer was stayed for twenty-four hours to enable the
patient to take any legal action, including, if she were
inclined, a CPLR Article 78 proceeding. <u>Id.</u> Under federal
caselaw, the existence of such State-established procedural
rights give rise to a liberty interest. <u>See</u> <u>Rodriquez v.
McLoughlin</u>, 214 F.3d 328, 338 (2d Cir. 2000); <u>see also</u> <u>Aliza K.
v. Ford</u>, 92 N.Y.2d 500, 507 (1998) (finding liberty interest).

By contrast, Plaintiffs here were transferred from the
criminal justice system to one of the Commissioner's hospitals.

At the time they were transferred, they were not patients and they were subject to criminal charges. No State law, in the form of a statute, regulation, or administrative procedure, confers upon them the right to a hearing prior to the placement. Indeed, the Complaint states that within twenty-four hours, the Commissioner is to designate an appropriate facility for a CPL 730.40 defendant's care and treatment.[2] Complaint, ¶ 12.

Plaintiffs also argue that the Court of Appeals found that "a greater stigma is associated with confinement in a secure institution." Complaint, ¶ 10, citing Aliza K., 92 N.Y.2d at 507 (1998). The Court of Appeals has explained, however, that the "greater stigma" was due to the fact that "a high percentage of the patients at Kirby are transferred from the criminal justice system as incompetent to stand trial .... " 92 N.Y.2d at 506-07. Plaintiffs themselves are former criminal defendants committed to Kirby because they were incompetent to stand trial. Given that Plaintiffs themselves are the source of the "stigma" found by the Court of Appeals to affect facilities such as Kirby, they cannot rationally assert a liberty interest to be free of placement in a facility with similar criminal defendants. See Charles W. v.

---

[2] It would not be possible for Defendants to provide Plaintiffs with a meaningful review of their placement within twenty-four hours. See Charles W. v. Maul, 214 F.3d 350, 359 (2d Cir. 2000) ("virtually impossible" for CPL 730 defendant to obtain effective judicial relief given brevity of 72-hour period of allegedly unlawful confinement).

Maul, 214 F.3d 350, 359 (2d Cir. 2000) (noting that while an incapacitated criminal defendant has not been convicted, he was the subject of criminal charges which were based on a finding of probable cause); Buthy v. Commissioner, 818 F.2d 1046, 1049 (2d Cir. 1987) (same).

### C. Assuming Plaintiffs Have A Liberty Interest Under State Law, New York's Post-Deprivation Process Adequately Protects That Interest

Assuming for argument's sake that Plaintiffs have a protected liberty interest under New York law, the Complaint still does not state a claim because the State's post-deprivation process adequately protects this interest.

Normally, persons are entitled to "some kind of hearing prior to the deprivation of a liberty interest." Velez v. Levy, 2005 U.S. App. LEXIS 4135 at *40 (2d Cir. Mar. 11, 2005) (internal punctuation and citation omitted). However, where the State is "unable to anticipate and prevent a random deprivation of a liberty interest," post-deprivation remedies may meet due process requirements. Id. For example, MHL Article 9, which has been found to satisfy federal due process requirements (see Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983)), employs prompt post-deprivation process to protect the liberty interests of persons committed for involuntary psychiatric care. See, e.g. MHL 9.31 (a) (procedure for obtaining a judicial hearing).

Here, where the determination to place a CPL 730 defendant

13

in a more-restrictive or less-restrictive hospital must be made within twenty-four hours, Complaint, ¶ 12, Defendants have no practical ability to conduct a pre-placement hearing. This does not, however, leave Plaintiffs without an adequate remedy. The Appellate Division, First Department, has held that patients who believe they have been improperly placed in a secure facility may obtain administrative review similar to that provided to the patient in Aliza K. "by applying for a transfer to a nonsecure facility under 14 NYCRR Part 517." Matter of Consilvio v. Michael B., 307 A.D.2d 852, 853 (1st Dep't 2003), appeal dismissed, 1 N.Y.3d 545 (2003), appeal denied 2 N.Y.3d 701 (2004); see also Matter of John K. v. Consilvio, 9 A.D.3d 256 (1st Dep't 2004) (MHL 9.35 rehearing and review not proper forum to seek transfer from secure facility). If the applicant is dissatisfied with the result of that administrative proceeding, he can seek judicial review under CPLR article 78. Michael B., 307 A.D.2d at 853.

New York law provides Plaintiffs with an adequate post-deprivation remedy to review their placement at Kirby. Indeed, one of the Plaintiffs here was the subject of the First Department's Michael B. Decision and Order, Complaint, ¶¶ 21, 29, so Plaintiffs cannot claim that they were not aware of the remedy. For these reasons, the second claim should be dismissed.

14

POINT III

**PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS ARE NOT
AFFECTED BY COMMITMENT TO A PARTICULAR HOSPITAL BECAUSE
THAT COMMITMENT DOES NOT "SHOCK THE CONSCIENCE"**

"[T]he Due Process Clause contains a substantive component
that bars certain arbitrary, wrongful government actions
regardless of the fairness of the procedures used to implement
them." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal
punctuation and citation omitted). In their third claim,
Plaintiffs speculate that, because Defendants have not provided a
"substantive standard" to determine whether a CPL 730.40
defendant should be placed in a less-restrictive or more-
restrictive hospital, they may have been placed in a more-
restrictive hospital "for an impermissible punitive purpose,"
which they contend violates their substantive due process rights.
Complaint, ¶ 54. This claim, too, should be dismissed.

The Supreme Court has been "reluctant to expand the concept
of substantive due process because the guideposts for responsible
decisionmaking in this unchartered area are scarce and
open-ended." Albright v. Oliver, 510 U.S. 266, 271-72 (1994)
(internal punctuation and citations omitted). In analyzing
substantive due process claims, the Supreme Court distinguishes
between legislation and executive acts:

> [T]he touchstone of due process is protection of the
> individual against arbitrary action of government,
> whether the fault lies in a denial of fundamental
> procedural fairness, or in the exercise of power

15

> without any reasonable justification in the service of
> a legitimate governmental objective. While due process
> protection in the substantive sense limits what the
> government may do in both its legislative and its
> executive capacities, criteria to identify what is
> fatally arbitrary differ depending on whether it is
> legislation or a specific act of a governmental officer
> that is at issue.

County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)

(internal punctuation and citations omitted).

Plaintiffs object to the State's exercise of power in its executive capacity, as they are challenging the specific act of a governmental officer. Complaint, ¶¶ 12 ("someone within OMH"), 54 (act has "an impermissible punitive purpose"). They allege that Defendants have provided no "substantive standard," comparable to a  legislative standard, to determine whether a CPL 730 defendant should be placed in a more-restrictive or less-restrictive hospital. Id., ¶ 53.

In order to determine that executive action is "fatally arbitrary," that action must "shock[] the conscience." County of Sacramento, 523 U.S. at 846. As the Supreme Court has held, the Fourteenth Amendment "is not a font of tort law to be superimposed upon whatever systems may already be administered in the States." Id. at 848. Consequently, the "constitutional concept of conscience-shocking" has no corollary in tort law. Id. Rather, it either "points clearly away from liability, or clearly toward it." Id.

In interpreting this concept, the Second Circuit has stated

16

that "[p]aradigm examples of conscience-shocking conduct are egregious invasions of individual rights." United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999) (undercover agent's role in conspiracy did not "shock the conscience" so as to bar prosecution); compare Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 170, 172-73 (2d Cir. 2002) (teacher's "full-force" slap of student's face with "an open hand" did not shock conscience and did not establish substantive due process claim) with Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002) (State trooper's videotaping employee undressing was conscience-shocking and established substantive due process claim) and Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 249, 252 (2d Cir. 2001) (teacher's use of excessive force including "slamming" student's head against bleachers four times was conscience-shocking and established substantive due process claim).

Plaintiffs' placement in a more-restrictive mental hospital by an administrator exercising statutorily-derived discretion, rather than a less-restrictive mental hospital, clearly fails to meet the stringent "shocks the conscience" standard. Plaintiffs lacked the capacity to stand trial and they were committed by criminal courts to the Commissioner's custody for care and treatment in an appropriate institution. This is clearly "a legitimate governmental objective." The only question is which hospital was "an appropriate institution." Plaintiffs' placement

in a more-restrictive hospital, even if reasonable persons could differ as to the appropriateness of the placement, is not so extreme that, as a matter of law, it could be said to "shock the conscience." Consequently, no claim for violation of Plaintiffs substantive due process rights is stated, and the third claim should be dismissed.[3]

POINT IV

**PLAINTIFFS' EQUAL PROTECTION RIGHTS DO NOT ENTITLE THEM TO JUDICIAL OVERSIGHT OF THEIR RETENTION IN A PARTICULAR HOSPITAL**

The Fourteenth Amendment provides that a State may not deny any person equal protection of the law. U.S. Const., Amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Plaintiffs allege that the New York statutory scheme provides them, as either CPL 730.40 defendants or MHL Article 9 patients,

---

[3] In connection with Plaintiffs' substantive due process claim, this Court should note that they have been aware since August, 2003, that New York State law offers them a post-deprivation process. Matter of Consilvio v. Michael B., 307 A.D.2d 852 (1st Dep't 2003). In fact, they are represented here by the same attorney who represented them during the Michael B. appeal. Complaint, ¶ 27. For reasons Plaintiffs do not offer, they have not used New York's post-deprivation process. See Id., ¶ 31 ("[T]here has never been a judicial determination that Michael B. ... require[s] secure retention"). Plaintiffs cannot reasonably argue that this Court should find that their continued placement at Kirby to be "conscience-shocking," when, for seventeen months after Michael B. was decided, they themselves have not been sufficiently offended to seek prompt review by 14 NYCRR § 517.4 of Defendants' placement determination.

with fewer procedural protections than CPL 330.20 defendants.[4]
Complaint, ¶¶ 56, 57. However, Plaintiffs' claim must fail, as
they are not similarly situated to CPL 330.20 defendants. Even
assuming they are similarly situated, the procedures at issue
satisfy rational-basis review – the standard governing this case.

### A. Plaintiffs Are Not Similarly Situated To CPL 330.20 Defendants

Plaintiffs are not similarly situated to CPL 330.20
defendants because they are committed to the custody of the
Commissioner for care and treatment, CPL 730.40 (1), and may be
transferred to less restrictive settings and released at the
Commissioner's or the hospital Director's discretion.[5] See MHL
29.15 (a). By contrast, the care and treatment of criminal
defendants found not responsible by reason of mental illness
pursuant to CPL 330.20 is subject to continuing judicial
oversight and court orders. See generally, CPL 330.20.

The difference between these two classes of patients is
apparent in the way they are committed to the Commissioner's

---

[4] Plaintiffs identify CPL 330.20 defendants as "insanity acquittees." This is incorrect, as CPL 330.20 defendants are not acquitted of their criminal charges. Instead, they are found "not responsible" by reason of mental illness. See CPL 220.15, 330.20.

[5] In the past, New York law provided for notification to certain persons before a CPL 730.40 defendant was released from the Commissioner's custody. See CPL 730.60 (6). These provisions were held to be unconstitutional in Ritter v. Surles, 144 Misc.2d 945, 952 (N.Y. Sup. 1988). The Commissioner did not appeal Ritter. See Charles W. v. Maul, 214 F.3d 350, 355 (2d Cir. 2000).

19

custody. CPL 730.40 defendants are committed to the Commissioner's custody following a finding by a criminal court that they do not have the capacity to stand trial. CPL 730.30, 730.40 (1). CPL 330.20 defendants who are placed at Kirby are committed to the Commissioner's custody only after an initial commitment hearing (see CPL 330.20 (6), (7)), which itself is the product of a long criminal justice process, including an examination of thirty to sixty days' duration that normally takes place in a secure psychiatric facility operated by the Commissioner (see CPL 330.20 (2), (3), (4)).

Furthermore, CPL 730.40 defendants may be found incapacitated whether they believe they have a mental illness or not. CPL 330.20 defendants, however, must have had the capacity to stand trial, and at that trial (or through a plea), they must have asserted and proved their mental illness as an affirmative defense to the criminal charges against them. See N.Y. Penal Law §§ 25.00, 40.15. It is only after they have successfully asserted the defense that they are committed to the Commissioner's custody for an initial examination. CPL 330.20 (2).

Finally, the criminal charges against a CPL 730.40 defendant are ultimately dismissed. See Complaint, ¶ 14, see also CPL 730.40 (2). By contrast, before a CPL 330.20 defendant can be found to lack criminal responsibility for a crime, there must be a finding by the criminal court that each element of the crime

20

charged has been or would have been established beyond a
reasonable doubt at trial. CPL 220.15 (5); see also, Matter of
Francis S., 87 N.Y.2d 554, 559 (1995). Thus, while a CPL 730.40
defendant has not been found to commit a crime, a CPL 330.20
defendant is found to have engaged in criminal behavior.

For these reasons, it is apparent that Plaintiffs, as CPL
730.40 defendants and MHL Article 9 patients, are not "similarly
situated" to CPL 330.20 defendants. See, Fetterusso v. State of
New York, 898 F.2d 322, 325 (2d Cir. 1990) (CPL 330.20 defendants
were not similarly situated to other patients committed to OMH
custody by criminal courts). Accordingly, Plaintiffs cannot claim
that they have been denied equal protection.

## B. There Is A Rational Basis For The Alleged Difference In Treatment Between CPL 730.40 Defendants And CPL 330.20 Defendants

Even if Plaintiffs could show that they are "similarly
situated" to CPL 330.20 defendants, they could not prevail on
their equal protection claim because there is a rational basis
for the distinction between CPL 730.40 defendants and MHL Article
9 patients on one hand, and CPL 330.20 defendants on the other.

### 1. The Rational-Basis Standard Of Review Applies To Plaintiffs' Claim

When state legislation is challenged as denying equal
protection, "[t]he general rule is that legislation is presumed
to be valid and will be sustained if the classification drawn by
the statute is rationally related to a legitimate state

21

interest." <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439-40 (1985). The rational-basis standard of review applies here because the mentally ill are not a suspect class and therefore statutes affecting them are not subject to heightened scrutiny. <u>Cleburne</u>, 473 U.S. at 445-46; <u>see also</u> <u>Heller v. Doe</u>, 509 U.S. 312, 321 (1993) ("[w]e have applied rational-basis review in previous cases involving ... the mentally ill").

The Second Circuit has employed the rational-basis standard in several cases involving claims that CPL 330.20 or CPL 730 defendants are treated differently than MHL Article 9 patients. <u>See</u> <u>Fetterusso v. State of New York</u>, 898 F.2d 322, 325 (2d Cir. 1990) (rational-basis analysis applied to uphold a statute which distinguished between CPL 330.20 defendants and other persons committed to the care of OMH by a criminal court); <u>Buthy v. Commissioner of OMH</u>, 818 F.2d 1046, 1050 (2d Cir. 1987) (rational-basis analysis applied to uphold rules distinguishing between patients residing in the forensic unit and other patients); <u>see also</u> <u>Charles W. v. Maul</u>, 214 F.3d 350, 360-61 (2d Cir. 2000) (finding qualified immunity based on <u>Buthy</u> analysis).

### 2. New York's Statutory Scheme Satisfies Rational-Basis Review

Under rational-basis review, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for classification." <u>Heller</u>, 509 U.S. at 320

22

(citations omitted). A classification does not fail rational-basis review because it results in some inequality or there is an imperfect fit between means and ends. See id. at 321.

Plaintiffs note that a CPL 330.20 defendant cannot be retained at Kirby unless the hospital proves that he or she has a dangerous mental disorder. Complaint, ¶¶ 9, 25, 26. While Plaintiffs cast this statutory provision as a right, the fact is, as noted earlier, that the Commissioner's treatment of CPL 330.20 defendants is subject to the continuing oversight of the courts and the District Attorney. CPL 330.20 (8), (9). The CPL 330.20 defendant cannot be transferred, placed on less restrictive status, furloughed, or released without the courts' express authorization, and, if the District Attorney requests it, a judicial hearing. See, e.g., CPL 330.20 (10), (11), (12). This supervision continues until the CPL 330.20 defendant is discharged, which may take years. CPL 330.20 (13).

By contrast, an MHL Article 9 patient may be placed on less restrictive status, transferred to a different hospital, or released at the discretion of the Commissioner, without judicial oversight or review by the District Attorney. See MHL 29.15 (a).

In any event, the differential treatment Plaintiffs allege is rationally related to legitimate state interests. The Legislature could have required the Commissioner to place CPL 730.40 defendants in a less-restrictive hospital. The Legislature

23

instead allowed the Commissioner to use his discretion in placing the defendant in "an appropriate institution." CPL 730.40 (1).

Obviously, the Legislature understood that those found incompetent to stand trial were the subject of outstanding criminal charges based on a finding of probable cause and, thus, their appropriate placement raised issues of institutional security. The Commissioner could reasonably have determined that Plaintiffs have a higher likelihood of dangerous behavior than other incapacitated criminal defendants, who may safely be treated in less-restrictive OMH hospitals. Clearly, the Commissioner has a legitimate interest placing a CPL 730.40 defendant in a hospital with the appropriate amount of security.

In addition to security, it is a matter of legitimate state concern that a CPL 730.40 defendant receives supervision and treatment that is appropriate for his or her condition. Because of its specially-trained staff and physical resources, Kirby can offer programs and services to patients who could not receive them at less-restrictive hospitals. 14 NYCRR § 57.1. Kirby patients also benefit from freer movement within its grounds. Id.

The State also has an interest in avoiding administrative and fiscal burdens which would result from the necessity of holding a prior judicial hearing each time a CPL 730.40 defendant is committed to the custody of OMH. See e.g., Aliza K. v Ford, 92 N.Y.2d 500, 510 (1998); Savastano v. Nurnberg, 77 N.Y.2d 300, 310

24

(1990). Finally, even if Plaintiffs could successfully argue that this procedure results in "some inequality" between their treatment and the treatment of CPL 330.20 defendants, that "imperfect fit" does not cause the procedures to fail rational-basis review. <u>Heller</u>, 509 U.S. at 321.

For all of the foregoing reasons, Plaintiffs cannot demonstrate that there is no rational basis for the State's regulation.

**CONCLUSION**

For all the foregoing reasons, this Court should find that the Complaint does not state a claim and that this action should be dismissed.

Dated: New York, New York
     March 23, 2005

                                     ELIOT SPITZER
                                     Attorney General of the State
                                      of New York
                                     <u>Attorney for Defendants</u>
                                     By:

                                     _____
                                     EDWARD J. CURTIS, JR. (2121)
                                     Assistant Attorney General

EDWARD J. CURTIS, JR.
JAMILA BERRIDGE
Assistant Attorneys General
<u>of Counsel</u>