UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARVIN BERNSTEIN, Director, Mental Hygiene Legal Service, First Judicial Department, and MICHAEL B., EUGENE C., and EDDIE L., patients at Kirby Forensic Psychiatric Facility, on behalf of themselves and on behalf of all others similarly situated,

                              Plaintiffs,

        - against -

GEORGE E. PATAKI, in his official capacity as Governor of the State of New York, SHARON CARPINELLO, in her official capacity as Commissioner of the New York State Office of Mental Health, and EILEEN CONSILVIO, in her official capacity as Director of Kirby Forensic Psychiatric Facility,

                              Defendants.

Docket Number
05-CV-1322 (GEL)
(THK)

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

                              ELIOT SPITZER
                              Attorney General of the State
                               of New York
                              <u>Attorney for Defendants</u>
                              120 Broadway, 24th Floor
                              New York, New York 10271
                              (212) 416-8641

                              April 13, 2005

EDWARD J. CURTIS, JR.
JAMILA BERRIDGE
Assistant Attorneys General
<u>of Counsel</u>

**TABLE OF CONTENTS**

                                                              **Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I    -    PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS MUST
                BE DISMISSED BECAUSE NEW YORK LAW PRESENTLY
                PROVIDES ANY PROCESS DUE . . . . . . . . . . . . 1

POINT II   -    PLAINTIFFS DO NOT HAVE A LIBERTY INTEREST IN
                COMMITMENT TO A PARTICULAR TYPE OF MENTAL
                HOSPITAL ARISING UNDER EITHER FEDERAL
                OR STATE LAW . . . . . . . . . . . . . . . . . . 5

POINT III  -    SUBSTANTIVE DUE PROCESS DOES NOT PREVENT THE
                LEGISLATURE'S COMMITMENT TO COMMISSIONER'S
                PROFESSIONAL DISCRETION THE DETERMINATION OF
                THE APPROPRIATE HOSPITAL FOR PLACEMENT OF
                PLAINTIFFS . . . . . . . . . . . . . . . . . . . 10

POINT IV   -    PLAINTIFFS' EQUAL PROTECTION RIGHTS DO NOT
                ENTITLE THEM TO JUDICIAL OVERSIGHT OF THEIR
                RETENTION IN A PARTICULAR HOSPITAL . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**Cases**                                                           **Page**

Addington v. Texas,
  441 U.S. 418 (1979) . . . . . . . . . . . . . . . . . . . . . 4, 14

Allen v. Wright,
  468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . 11

Aliza K. v. Ford,
  92 N.Y.2d 500 (1998) . . . . . . . . . . . . . . . . . . . . . 8, 9

Buthy v. Commissioner,
  818 F.2d 1046 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . 14

City of Cleburne v. Cleburne Living Center,
  473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . . . . 14

Eisenbud v. Suffolk County,
  841 F.2d 42 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . 14

Foucha v. Louisiana,
  504 U.S. 71 (1992) . . . . . . . . . . . . . . . . . . . . . . . 4

Francis S. v. Stone,
  221 F.3d 100, 111-12 (2d Cir. 2000) . . . . . . . . . . . . . . 13

Leebaert v. Harrington,
  332 F.3d 134 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . 11

Matter of Consilvio v. Michael B.,
  307 A.D.2d 852 (1st Dep't 2003), appeal dismissed,
  1 N.Y.3d 545 (2003) appeal denied 2 N.Y.3d 701
  (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Matthews v. Eldridge,
  424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . 3

National Organization for Women v. Pataki,
  261 F.3d 156 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . 5

Project Release v. Prevost,
  722 F.2d 960 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . 10

Rodriguez v. McLoughlin,
  214 F.3d 328 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 8

Society for Good Will to Retarded Children v. Cuomo,
 737 F.2d 1239 (2d Cir. 1984) . . . . . . . . . . . . . . 5, 6, 11

Youngberg v. Romeo,
 457 U.S. 307 (1982) . . . . . . . . . . . . . . . . . . . 5, 6, 11

**Statutes**                                                  **Page**

Federal Rule of Civil Procedure 12 (b)(6) . . . . . . . . . . . 1

New York Civil Practice Law and Rules

  Article 78 . . . . . . . . . . . . . . . . . . 1, 3, 4, 13, 15

  § 7803 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

New York Criminal Procedure Law

  § 330.20 . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

    330.20 (3) . . . . . . . . . . . . . . . . . . . . . . . . 13

    330.20 (4) . . . . . . . . . . . . . . . . . . . . . . . . 13

    730.40 (1) . . . . . . . . . . . . . . . . . . . . . . 11, 13

New York Mental Hygiene Law

  Article 9 . . . . . . . . . . . . . . . . . . . . . . . . . 10

  § 29.11(d) . . . . . . . . . . . . . . . . . . . . . . . . . 2

    33.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 14, New York Codes, Rules, and Regulations

  Part 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  Part 517 . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

  § 27.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    27.2(e) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    27.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    27.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Statutes**                                                                 **Page**

36.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

517.1 . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**PRELIMINARY STATEMENT**

This reply memorandum is submitted on defendants' behalf in support of their motion pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Complaint on the ground that it fails to state a claim.

**ARGUMENT**

**POINT I**

**PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS MUST BE DISMISSED BECAUSE NEW YORK LAW PRESENTLY PROVIDES ANY PROCESS DUE**

For reasons set forth in Defendants' Main Memorandum ("Def. Mem."), and in Point II below, Plaintiffs have no cognizable liberty interest in placement in a particular type of hospital. But even assuming that Plaintiffs have a liberty interest in placement in a particular type of hospital, their procedural due process claims can be dismissed because the State law procedures that allow them to seek review of the Commissioner's placement determinations satisfy the Fourteenth Amendment.

Notably, Plaintiffs "<u>do not claim that they are entitled to a pre-placement hearing</u>." Plaintiffs' Memorandum ("Pl. Mem.") at 16 (emphasis supplied). Instead, they posit that procedural due process requires imposition of a post-deprivation remedy via the MHL Article 9 retention hearing process, rather than through the post-deprivation administrative and CPLR Article 78 review remedies that presently exist, by which individuals already may

1

challenge a Commissioner's placement decision. Id. at 16-17.

Plaintiffs argue that the transfer procedure offered by 14 NYCRR Part 517 is not "to be used as a mechanism for transfer between secure and non-secure hospitals." Id. at 13. This claim is contradicted by state caselaw. In a case litigated by Plaintiffs' counsel, the First Department held that review of Plaintiff Michael B.'s placement at Kirby could be obtained "by applying for a transfer to a nonsecure facility under 14 NYCRR Part 517, and the result of such administrative proceedings will be subject to judicial review under CPLR article 78." Matter of Consilvio v. Michael B., 307 A.D.2d 852 (1st Dep't 2003), appeal dismissed, 1 N.Y.3d 545, appeal denied 2 N.Y.3d 701 (2004).[1]

---

[1] Plaintiffs' argument that 14 NYCRR Part 517 is not actually available because, to invoke the procedure, they need "the written consent of the facility" to which they seek transfer, Pl. Mem. at 13, is likewise mistaken. That requirement does not apply to transfers between OMH facilities, which are the only sort of transfers/placements at issue in this case. The statute under which the regulation was promulgated excludes OMH facilities from this requirement, MHL 29.11 (d). Moreover, Plaintiffs do not allege that OMH has refused to consider a transfer request made by any of the Plaintiffs on the ground that they lacked such "written consent." Accordingly, the Complaint as pleaded does not allege facts that would support a claim that Plaintiffs were denied administrative review of their placement determinations, or even that any of the Plaintiffs has sought to employ the existing procedures to challenge their placement.

Similarly misplaced is the argument contained in Plaintiffs' footnote 7. This argument 1) is contrary to the governing construction of the regulation provided in Consilvio, noted above; 2) misreads 14 NYCRR § 517.1 (a), since the Mid-Hudson language, understood in context of a regulation governing applications to transfer to a new facility, merely prohibits applications from patients that would seek transfer to that high-level security facility, and not applications to transfer to

2

Plaintiffs argue that these procedures are inadequate under Matthews v. Eldridge. Plaintiffs have not employed these procedures, so they are attacking their facial adequacy. To the extent their argument attacks the supposed absence of "layers of professional and judicial review," Pl. Mem. at 14-15, they ignore entirely the availability of judicial review offered by CPLR Article 78 petitions, which may be filed by a person who wishes to challenge an administrative determination they obtained through their Part 517 transfer application. In a distinct context – one which addressed "what process is constitutionally due" OMH patients being transferred to Kirby – the New York Court of Appeals followed the United States Supreme Court's balancing test and concluded that a similar administrative procedure "satisf[ied] the requirements of procedural due process in all respects." Aliza K. v. Ford, 92 N.Y. 2d 500, 507-10 (1998), citing Matthews v. Eldridge, 424 U.S. 319 (1976). The Court of Appeals held that the decision to place a patient at Kirby "is primarily one of professional medical judgment as to the most appropriate therapeutic setting," and that a judicial hearing would not "significantly reduce the possibility of an erroneous transfer decision." 92 N.Y.2d at 508-09. Such a judicial hearing

---

another facility from Mid-Hudson; and 3) is, in any case, irrelevant to this suit, since Plaintiffs concededly do not represent patients at Mid-Hudson and do not have standing here to assert an alleged inadequacy in a procedure that implicates only patients at Mid-Hudson and not themselves.

is available if a patient commences a CPLR Article 78 proceeding challenging the placement decision.

Plaintiffs next contend that <u>substantive</u> (not procedural) aspects of due process render the state's procedures inadequate, because, under these procedures, the State does not bear the burden of proving that the patient in question requires placement in a more, rather than less, restrictive facility (and is subject to merely an "arbitrary and capricious" standard of judicial review). Pl. Mem. at 15, <u>citing</u> <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979) <u>and</u> <u>Foucha v. Louisiana</u>, 504 U.S. 71, 81-82 (1992). These cases are inapposite. Both concerned the issue of involuntary commitment, and held that substantive due process required a State to satisfy a substantive threshold before doing so. Here, Plaintiffs assert a far weaker liberty interest (assuming it exists at all, <u>see</u> Point II, <u>infra</u>), which addresses not the commitment of an individual at liberty, but rather, the level of security provided to him at the facility of treatment.

Moreover, Plaintiffs have conceded they are <u>not</u> entitled to pre-deprivation process with respect to that placement decision. No case cited by Plaintiffs supports their claim that substantive due process requires the state to meet a heightened substantive or evidentiary threshold (beyond the rationality required by CPLR Article 78 of governmental decisionmaking), with respect to a decision to place, or continue to place, a person such as Michael

4

B., who concededly is subject to commitment, in a more, rather than less, secure facility. And, under procedural due process standards, Article 78 review of administrative decisionmaking has been recognized in a variety of contexts as adequate under the Fourteenth Amendment. See National Organization for Women v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001).

### POINT II

**PLAINTIFFS DO NOT HAVE A LIBERTY INTEREST IN COMMITMENT TO A PARTICULAR TYPE OF MENTAL HOSPITAL ARISING UNDER EITHER FEDERAL OR STATE LAW**

No court has recognized a liberty interest under the Fourteenth Amendment respecting the particular security level of a psychiatric facility at which Plaintiffs are hospitalized. Plaintiffs argue that they have a cognizable liberty interest in being free of "bodily restraint," Pl. Mem. at 5, citing Youngberg v. Romeo, 457 U.S. 307, 316 (1982), but the Second Circuit has noted that "the freedom from restraint with which Youngberg was concerned was ... freedom from being unnecessarily shackled." Society for Good Will to Retarded Children v. Cuomo, 737 F.2d 1239, 1247 (2d Cir. 1984) (internal punctuation omitted). The Second Circuit stated that it was "unwilling to extend Youngberg to apply to situations in which the state has done nothing to place undue physical restraints on individuals .... " Id.

New York law already controls the use of restraining devices such as shackles, and the use of seclusion, defined as the

5

placement of a patient in a room alone with a door that the patient cannot open. See MHL 33.04; 14 NYCRR §§ 27.2 (e), (d), 27.7. The statutes and regulations do not except Kirby or any other type of hospital, and Plaintiffs do not claim that they were subjected to any of these types of bodily restraint.

Instead, Plaintiffs argue that the Fourteenth Amendment protects as a liberty interest the relative degrees of movement afforded to patients in more or less-restrictive types of psychiatric hospitals, even though less-secure facilities are themselves "locked and heavily guarded, and the risk of a patient's escape is minimal." Complaint, ¶¶ 7, 8. Clearly, effective operation of a psychiatric hospital requires restriction of patients' freedom of movement. Nevertheless, neither Youngberg nor Society of Good Will hold that under the Constitution, a person lawfully in State custody for psychiatric care who has experienced less freedom of movement than others subject to such lawful hospitalization, has a constitutionally-established liberty interest in being placed in a hospital setting that provides him or her with greater freedom of movement. Rather, the liberty interest in freedom from bodily restraints expressed in Youngberg and Society of Good Will focuses on shackles, which are controlled by New York law.

Plaintiffs must also concede that they cannot "assert a federal right, stemming from the substantive aspects of the due

6

process clause, in [placement] in a 'least restrictive alternative.'" Pl. Mem. at 8, n.4, noting that the "Second Circuit has rejected this view." Id. What Plaintiffs are left with is the paradoxical assertion that the substantive component of the due process clause, in some undefined way, creates such a liberty interest but "only where a state has created a two-tiered system for housing its mentally ill . . ." Id.

This Court should reject that notion. Plaintiffs purport to recognize that substantive due process protects fundamental rights and liberties "deeply rooted" in this nation's history (Pl. Mem. at 19, n.8). But this very premise is offended by Plaintiffs' theory, which holds that there is no deeply-rooted right implicated by one State's placement of individuals in psychiatric hospitals that have a single, restrictive security level. How, then, can such a deeply-rooted constitutional right suddenly arise in a neighboring State, in which an individual is placed in a facility with the same restrictive security level, but only if that State's psychiatric system included other State hospitals that provided less-restrictive security levels? A substantive due process right cannot come in and out of existence merely because one state chooses to provide a greater range of treatment modalities than its neighbor.

Since federal constitutional law does not support the existence of the particular liberty interest Plaintiffs invoke,

7

they also invite this Court to find that New York has created a liberty interest in their placement in the least-restrictive environment because language concerning "least-restrictive environment[s]" appears in 14 NYCRR § 36.1. Pl. Mem. at 11. This is incorrect. The regulation upon which Plaintiffs rely is a statement of philosophy, not a rule that creates an entitlement to a particular government service or benefit. Furthermore, it applies only to <u>outpatient</u> care, <u>see</u> 14 NYCRR Subchapter C ("Termination of Inpatient Care") and Part 36 ("Discharge and Conditional Release of Patients"), and hence does not even address the subject matter of Plaintiffs' complaint.

The Second Circuit has held that the "most common manner in which a State creates a liberty interest" is by "establishing substantive predicates" and providing that if these predicates are met, "a particular outcome must follow." <u>Rodriguez v. McLoughlin</u>, 214 F.3d 328, 338 (2d Cir. 2000). No substantive predicate is established by 14 NYCRR § 36.1, so there is no basis to find that this regulation creates a liberty interest in placement in a less-restrictive hospital.

Plaintiffs, alternatively, would base their liberty interest claim upon <u>Aliza K. v. Ford</u>, although they concede that <u>Aliza K.</u> is not authority binding on this court. Defendants noted that the New York Court of Appeals had found that OMH patients had a protected interest in transfer from a less-restrictive facility

8

to more-restrictive hospitals, such as Kirby, Def. Mem. at 11, citing Aliza K. v. Ford, 92 N.Y.2d 500, 507 (1998), but, as defendants noted, 1) state regulations affording rights to persons prior to being subject to such transfers ought to provide an independent state law ground for finding that right; 2) the liberty interest identified in Aliza K. does not apply to Plaintiffs since at the time the Commissioner designated a facility for their care and treatment, they were not OMH patients in less-secure facilities, but were, instead, defendants in the custody of the criminal justice system; and 3) having been criminal defendants, Plaintiffs here (unlike the Plaintiff in Aliza K.) cannot complain of being stigmatized through placement with persons who were charged with crimes. Id. at 11-12.

Plaintiffs, in response, essentially repeat that both "stigma and restrictions on freedom of movement are elements of the personal liberty protected by the federal constitution." Pl. Mem. at 7 n. 3. As noted above, however, Plaintiffs' "freedom of movement" claim is not supported by the federal constitutional decisional law invoked. See supra, pp. 5-6. Furthermore, as Defendants suggested in their main brief, any general "stigma" Plaintiffs experience from being placed at Kirby (i.e., stigma which arises independent of that associated with their status as, or association with, persons who were charged with crimes) is not appreciably different from the stigma associated with psychiatric

9

commitment as a whole, which is adequately addressed by the due process protections Plaintiffs have against improper commitment, see MHL Article 9; Project Release v. Prevost, 722 F.2d 960 (2d Cir. 1983). For these reasons, Plaintiffs' first and second claims should be dismissed.

### POINT III

**SUBSTANTIVE DUE PROCESS DOES NOT PREVENT THE LEGISLATURE'S COMMITMENT TO THE COMMISSIONER'S PROFESSIONAL DISCRETION THE DETERMINATION OF THE APPROPRIATE HOSPITAL FOR PLACEMENT OF PLAINTIFFS**

Defendants understood Plaintiffs' substantive due process claim to be based on the State's exercise of power in its executive capacity. Def. Mem. at 16. However, Plaintiffs respond that their substantive due process claim objects not "to any particular executive action; they do not complain that OMH acted arbitrarily in assigning any patient to Kirby rather than a non-secure facility ..." Pl. Mem. at 18 (emphasis supplied). Rather, Plaintiffs assert that New York's statute is unconstitutional because it "provides no substantive standard" to determine which criminal defendants should be placed at Kirby. Id.

In view of Plaintiffs' clarification that they do not assert they have been wrongfully hospitalized or wrongfully remain hospitalized at Kirby instead of at a less-secure facility (or, put otherwise, that the decision in each of their cases would not have been different if an unidentified standard derived from their substantive due process right had been followed), it

10

appears that their claim should be dismissed because they lack standing. See Allen v. Wright, 468 U.S. 737, 751 (1984). Nevertheless, even if they have standing to challenge the statute (notwithstanding their concession that they do not assert a concrete injury in the form of placement in the wrong facility), their substantive due process claim should be dismissed because the legislation fully comports with Constitutional requirements.

The State Legislature deferred to the Commissioner's professional judgment in determining what institution would provide a particular criminal defendant with appropriate care and treatment. CPL 730.40 (1). This reliance on the Commissioner's "professional judgment" is appropriate, since that standard mirrors the constitutional standard. Substantive due process requires - at most – in contexts such as these, that the decision, here as to suitable placement, be made by professionals who do not "substantially depart[] from accepted professional judgment, practice or standards . . . " Youngberg, 457 U.S. at 323, quoted in Society for Good Will, 737 F.2d at 1246. (Due process merely requires rational professionally-based decisions).

Plaintiffs' attempt to cast their substantive due process as challenging a legislative act is, in any case, unavailing. As an initial matter, Plaintiffs must show that the legislation affects a fundamental right. Leebaert v. Harrington, 332 F.3d 134, 140 (2d Cir. 2003). If so, the legislation is subject to strict

scrutiny review. Id. If not, the legislation need only be "reasonably related to a legitimate state objective." Id.

Fundamental rights are those "implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." Id. As noted in Point II, Plaintiffs cannot assert that their right to be placed in a less-restrictive hospital meets this requirement, especially as they contend that they have a substantive right only because New York has created two tiers of hospitals. Pl. Mem. at 8. This in not a "fundamental right."

Thus, Defendants need show only that the State's legislative action is "reasonably related to a legitimate state objective." Ensuring that incapacitated criminal defendants receive treatment is a legitimate state objective, and allowing a professional to decide what type of treatment at what type of hospital is needed can hardly be more reasonably related to that objective. Plaintiffs state no claim for violation of their substantive due process rights, and the third claim should be dismissed.

**POINT IV**

**PLAINTIFFS' EQUAL PROTECTION RIGHTS DO NOT ENTITLE THEM TO JUDICIAL OVERSIGHT OF THEIR RETENTION IN A PARTICULAR HOSPITAL**

In their main memorandum on this motion, Defendants noted that Plaintiffs are not "similarly situated" to CPL 330.20 defendants for equal protection analysis. Def. Mem. at 19-21. There are significant differences between CPL 330.20 defendants

12

and Plaintiffs. Among others, a CPL 330.20 defendant committed to the Commissioner's custody must be placed in a secure facility, such as Kirby, for up to sixty days. CPL 330.20 (3), (4). By contrast, when a CPL 730.40 defendant is committed to the Commissioner's custody, the Commissioner exercises professional judgment to place the CPL 730.40 defendant in an appropriate facility, which may be Kirby or may be a less restrictive facility. Furthermore, once the Commissioner has made a determination, the CPL 730.40 defendant need not wait, but may seek immediate review either by an internal appeal, see 14 NYCRR § 27.8, or through CPLR Article 78. CPLR 7803 (3). Thus, while are differences in the way CPL 330.20 defendants and Plaintiffs are treated, the differences weigh in Plaintiffs' favor.

Plaintiffs also claim that the appropriate level of review is not rational basis, but an intermediate level of scrutiny, relying upon Francis S. v. Stone (221 F.3d 100, 111-12 (2d Cir. 2000)). Francis S., however, addressed the recommitment to a secure hospital of a CPL 330.20 defendant who had already been released to the community following prior determinations that he was not dangerous. Id. at 103-04. By contrast, Plaintiffs here are not at liberty and concede that they should be in a hospital. See Plaintiffs' Memorandum at 16. As a result, the Francis S. standard should not apply to Plaintiffs' situation.

In any event, even assuming that Plaintiffs are entitled to

13

an intermediate level of scrutiny, New York's procedure satisfies that scrutiny. Intermediate levels of review require an inquiry into "whether the statute furthers a substantial governmental interest, whether the law is substantially related to an important governmental interest, and whether the law is substantially related to a legitimate governmental interest." Eisenbud v. Suffolk County, 841 F.2d 42, 45 (2d Cir. 1988) (citations and internal punctuation omitted); see also City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440-41 (1985). Obviously, the State has a substantial, important, and legitimate interest in ensuring that criminal defendants such as Plaintiffs, whose mental illness prevent them from standing trial on the charges against them, receive care and treatment in an appropriate institution. See, e.g., Addington v. Texas, 441 U.S. 418, 426 (1979) (interests under parens patriae and police power); Buthy v. Commissioner, 818 F.2d 1046, 1049-50 (2d Cir. 1987) (criminal charges based on probable cause). Likewise, the Legislature's deference to the Commissioner's professional judgment as to how this treatment may best be effected is substantially related to that interest.

    Nor does the difference in treatment between CPL 330.20 defendants and Plaintiffs require a different result. CPL 330.20 extends to the District Attorney a right to appear at any subsequent judicial hearing, and to oppose any of the

Commissioner's applications to treat the CPL 330.20 defendant in a less restrictive manner. See, generally. CPL 330.20. By contrast, the District Attorney has no right to appear or oppose any of the Commissioner's treatment decisions concerning CPL 730.40 defendants such as Plaintiffs, and Plaintiffs can immediately seek review of their placement at Kirby by means of a CPLR Article 78 proceeding. Again, while there is a difference in the way that CPL 330.20 defendants and Plaintiffs are treated, the difference benefits Plaintiffs. Accordingly, Plaintiffs' equal protection claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, this Court should find that the Complaint does not state a claim and dismiss this action.

Dated: New York, New York
     April 13, 2005

                            ELIOT SPITZER
                            Attorney General of the State
                             of New York
                            Attorney for Defendants
                            By:

                            _____
                            EDWARD J. CURTIS, JR. (2121)
                            Assistant Attorney General

EDWARD J. CURTIS, JR.
JAMILA BERRIDGE
Assistant Attorneys General
of Counsel

15