UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| MARVIN BERNSTEIN, Director, | : | |
| Mental Hygiene Legal Service, | : | |
| First Judicial Department, and | : | |
| MICHAEL B., EUGENE C., and | : | |
| EDDIE L., patients at Kirby Forensic | : | |
| Psychiatric Facility, on behalf of themselves | : | |
| and on behalf of all others | : | |
| similarly situated, | : | |
|     Plaintiffs, | : | |
|     -v.- | : | 05 Civ. 1322 (GEL)(THK) |
|  | : | |
| GEORGE E. PATAKI, in his official capacity as | : | |
| Governor of the State of New York, | : | |
| SHARON CARPINELLO, in her official capacity | : | |
|  as Commissioner of the | : | |
| New York State Office of Mental Health, | : | |
| and EILEEN CONSILVIO, | : | |
| in her official capacity as Director of Kirby | : | |
| Forensic Psychiatric Facility, | : | |
|  | : | |
|     Defendants. | : | |

------------------------------------------------------------------X


**Plaintiffs' Memorandum of Law in Support of Motion for Class Certification**


MARVIN BERNSTEIN, Director
Mental Hygiene Legal Service, First Dept.
<u>Attorneys  for Plaintiffs</u>
60 Madison Avenue, 2nd Floor
New York, New York 10010
Phone:  (212) 779-1734


April XX, 2005


STEPHEN J. HARKAVY
SADIE ZEA ISHEE
        <u>Of Counsel</u>

## TABLE OF CONTENTS

**page**

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 1

ARGUMENT .............................................................................................................. 3

    I. THE CLASS PROPOSED BY THE PLAINTIFFS SATISFIES THE
        REQUIREMENTS ESTABLISHED BY FEDERAL RULES OF CIVIL
        PROCEDURE 23(A) AND (B)
        ....................................................................................................... 3

        A. The Proposed Class Meets the Requirements of Rule 23(a) ............................ 4

            1. Numerosity ............................................................................................. 5
                i. size of class ...................................................................... 6
                ii. transitory nature of class ................................................. 8
                iii.  nature of relief sought ................................................. 10
                iv. plaintiffs' ability to institute individual suits ........................ 10
                v.  judicial economy ................................................... 13
            2. Commonality ........................................................................................ 14
            3. Typicality ............................................................................................. 15
            4. Adequacy of Representation  ............................................................... 18

        B. The Proposed Class Meets the Requirements of Rule 23(b)(2) ...................... 19

    II. MENTAL HYGIENE LEGAL SERVICE, THE PROPOSED CLASS COUNSEL,
        WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF
        ALL CLASS MEMBERS AS REQUIRED BY FEDERAL RULE OF CIVIL
        PROCEDURE 23(g) ........................................................................................ 19

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**page**

*Abdul-Malik v. Coombe*, 1996 WL 706914 (S.D.N.Y. 1996) .................................................. 9, 11

*Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82 (E.D.N.Y. 1989) ........................................... 12

*Alston v. Coughlin*, 109 F.R.D. 609 (S.D.N.Y. 1986) .................................................. 11

*Andre H. v. Ambach*, 104 F.R.D. 606 (S.D.N.Y. 1985) .................................................. 8

*Ansari v. New York University*, 179 F.R.D. 112 (S.D.N.Y. 1998) .................................................. 5

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ........................... 12

*Arrango v. Ward*, 103 F.R.D. 638 (S.D.N.Y. 1984) .............................................. 9, 11

*Arthur v. Starrett City Assoc.*, 98 F.R.D. 500 (E.D.N.Y. 1983) .................................................. 8

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002) ...................................................... 18

*Boulet v. Cellucci*, 107 F.Supp.2d 61 (D.Mass 2000) .................................................. 11

*Bruce v. Christian*, 113 F.R.D. 554 (S.D.N.Y. 1986) .................................................. 7

*Bublitz v. E.I. Du Pont de Nemours and Co.*, 202 F.R.D. 251 (S.D. Iowa 2001) .................. 7, 10

*Caroline C. by Carter v. Johnson*, 174 F.R.D. 452 (D. Neb. 1996) .......................................... 11

*Civic Ass'n of the Deaf of New York City v. Giuliani*, 915 F. Supp. 622 (S.D.N.Y. 1996) .......... 4

*Clarkson v. Coughin*, 145 F.R.D. 339 (S.D.N.Y. 1993) ................................................... 7, 11

*Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) ...................................................... 8, 9

*Consilvio v. Michael B.*, 307 A.D.2d 852 (1st Dep't 2003) ................................................ 2, 16, 17

*Consolidated Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................... 7

*Crenshaw v. Maloney*, 1976 WL 13311 (D. Conn. 1976) ......................................................... 7

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001) ...................................................... 5

*Cross v. Nat'l Trust Life Ins. Co*, 553 F.2d 1026 (6th Cir. 1977) .................................................. 7

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967) ................................................................................................................................ 8

*Dale Elecs., Inc. v. R.C.L. Elecs.*, Inc., 53 F.R.D. 531 (D.N.H. 1971) ......................................... 7

*Denny v. Jenkins & Gilchrist*, __F. Supp.2d__, 2005 WL 388562 at *5 (S.D.N.Y. Feb. 18, 2005)4

*Familienstiftung v. Askin*, 178 F.R.D. 405 (S.D.N.Y. 1998) ......................................... 5

*Folsom v. Blum*, 87 F.R.D., 443 (S.D.N.Y. 1980) ......................................... 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990) ................................................................................................................... 15

*Gaspar v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) ......................................... 8

*General Tel. Co. of Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318 (1980) ......................................... 5

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ................................................. 13

*German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537 (S.D.N.Y. 1995) ..................... 6, 14

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ......................................... 9

*Glover v. Crestwood Lake Section 1 Holding Corps.*, 746 F.Supp. 301 (S.D.N.Y. 1990) ......... 11

*Grant v. Sullivan*, 131 F.R.D. 436 (M.D. Pa. 1990) ......................................... 7

*Hirschfeld v. Stone*, 193 F.R.D. 175 (S.D.N.Y. 2000) ......................................... 9

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) .......................... 18, 20

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ..................... 5

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ..................................... 14

*Jackson v. Foley*, 156 F.R.D. 538 (E.D.N.Y. 1994) ......................................... 9

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ................................................. 8

*Karen L. v. Physicians Health Servs., Inc.*, 202 F.R.D. 94 (D. Conn 2001) ............................. 11

*Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451 (E.D.N.Y. 1996) ......................... 14

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................. 14

*Matter of David B.*, 97 N.Y.2d 267 (2002) ................................................................ 2

*Nicholson v. Williams*, 205 F.R.D. 92 (E.D.N.Y. 2001) ................................ 10, 14

*Philadelphia Elec. Co. v. Anaconda Brass Co.*, 43 F.R.D. 452 (E.D. Pa. 1968) ........................ 13

*Pyke v. Cuomo*, 209 F.R.D. 33 (N.D.N.Y. 2002) ........................................ 11

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ................................ 4, 5, 7, 10, 13

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ...................... 15, 18

*Scott v. Aetna Servs., Inc.*, F.R.D. 261 (D. Conn. 2002) ............................. 12

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) ........................... 14

*United States ex rel. Morgan v. Sielaff*, 546 F.2d 218 (7th Cir. 1976) ......................... 11

## STATUTES

C.P.L. § 730.40 ...................................................................... 1, 6, 10, 17

Fed. R. Civ. P. 23 ...................................................................... passim

M.H.L. § 47.03 ...................................................................... 1, 20

M.H.L. § 9.33 ...................................................................... 1-3, 10, 16, 17

## OTHER

1 Newberg on Class Actions § 3:6 (4th ed. 2005) ....................... 6, 7, 10, 13

## PRELIMINARY STATEMENT

Plaintiffs Michael B., Eugene C., and Eddie L. submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 23, to certify this lawsuit as a class action.[1] The proposed class consists of all persons retained at Kirby Forensic Psychiatric Center ("Kirby") under  ("M.H.L.") § 9.33 who originally entered Kirby as Criminal Procedure Law ("C.P.L.") § 730.40 patients, and all § 730.40 patients whose retention may be sought during the pendency of this action. Plaintiffs seek to maintain this action pursuant to Fed. R. Civ. P. 23(b)(2)  because defendants have acted "on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

## FACTUAL BACKGROUND

Plaintiffs were found unfit to stand trial on criminal charges by New York criminal court judges.  C. ¶ 1.  Pursuant to N.Y. C.P.L. § 730.40(1), criminal court judges issued an "order of observation" for each plaintiff, which served to commit them to the custody of the New York Office of Mental Health (OMH) "for care and treatment in an appropriate institution."  C. ¶ 11. Someone within OMH designated that each of these patients would be placed at Kirby, a "secure" psychiatric facility, rather than a "non-secure" facility. C. ¶ 12.

---

[1] The complaint also names Marvin Bernstein, Director of Mental Hygiene Legal Services (MHLS), First Judicial Department, as a plaintiff in this action.  MHLS is an agency mandated pursuant to N.Y. Mental Hygiene Law § 47.03 to provide legal services and assistance to all patients in the custody of the New York Office of Mental Health (OMH).  MHLS is statutorily mandated "[t]o initiate and take any legal action necessary to safeguard the right of any patient to protection from abuse and mistreatment."  M.H.L. § 47.03 (e).  Mr. Bernstein initiated the instant action on behalf of the named plaintiffs in accordance with MHLS's mandate.

New York operates two types of civil psychiatric facilities for involuntary patients.  C. ¶ 6.  Secure facilities, including Kirby, are significantly more restrictive than non-secure facilities, and are intended for the confinement of the most dangerous individuals within the New York mental health system– those suffering from a "dangerous mental disorder," in the terminology of New York law.  C. ¶¶ 6, 7, 9.  Non-secure facilities represent a "step down" in restrictiveness under the New York scheme and are intended for the confinement of those who, although mentally ill and dangerous, are suffering from less than the heightened "dangerous mental disorder."  *Id.  See also Matter of David B.*, 97 N.Y.2d 267, 278 (2002).  No hearing or other formal procedure, nor any written policy or regulation, guides the OMH in deciding whether patients will be placed in secure or non-secure facilities.  C. ¶ 13.

After plaintiffs were referred to OMH custody, the criminal charges against each of them were dropped, and the hospital sought to civilly retain each one, pursuant to M.H.L. § 9.33.  C. ¶¶ 14-17.  M.H.L. § 9.33, which provides for the involuntary retention of civil patients, does not articulate a standard for secure retention.  C. ¶ 18.  Nevertheless, until August 2003, Kirby's applications for § 9.33 involuntary retention for any given patient included substantive allegations about the patient's need for secure retention; it was assumed that the hospital bore the burden of proving each patient's need for secure retention at the hearings held upon such applications.  C. ¶¶ 16, 19.  Furthermore, until August 2003, § 9.33 hearing court judges would direct patients' transfer from Kirby to non-secure settings if they determined, in a given case, that Kirby had failed to carry its burden of proving the need for secure retention.  C. ¶ 20.

In an August 2003 decision, *Consilvio v. Michael B.*, 307 A.D.2d 852, 853-54 (1st Dep't

2003), the New York Appellate Division, First Department, stated that, contrary to prior custom

and practice, under New York's statutory scheme, judges conducting § 9.33 hearings do not have

the option of transferring patients to non-secure facilities, regardless of any medical testimony

indicating that the patient could be adequately managed in the less-restrictive setting.  C. ¶ 21.

As a result of this decision, Kirby no longer bears the burden of proving § 9.33 patients' need for

secure retention or of demonstrating that these patients exhibit any heightened degree of

dangerousness. C. ¶ 22-23.

       It is the patients' contention that the New York statutory scheme violates their right to

procedural due process by infringing upon a constitutionally-protected liberty interest in non-

secure treatment without providing adequate procedural protections to ensure against an

erroneous deprivation.  C. ¶ 1. Furthermore, the patients allege a violation of their substantive

due process rights because the New York statutory scheme fails to ensure that the restrictive

conditions in secure confinement are necessary to the purposes underlying their involuntary civil

psychiatric commitment.  *Id.*  Finally, the patients contend that the statutory scheme violates

their Equal Protection rights because it provides fewer procedural protections to them than to

other classes of patients at Kirby.  *Id.*

**ARGUMENT**

**I. THE CLASS PROPOSED BY THE PLAINTIFFS SATISFIES THE REQUIREMENTS
ESTABLISHED BY FEDERAL RULES OF CIVIL PROCEDURE 23(A) AND (B)**

As an initial matter, the Court on a class certification motion must determine whether plaintiffs have pleaded facts that meet the requirements of Fed. R. Civ. P. 23. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). In this Circuit, Rule 23's requirements are liberally interpreted. *See Denny v. Jenkins & Gilchrist*, __F. Supp.2d__, 2005 WL 388562 at *5 (S.D.N.Y. Feb. 18, 2005); *Civic Ass'n of the Deaf of New York City v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996).

Plaintiffs' allegations satisfy the requirements of Rule 23(a) because they have alleged that joinder of all class members is impracticable, that questions of law and fact are common to all class members, that the representative parties have claims typical of the class, and that the representative parties will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a). Furthermore, the plaintiffs' allegations satisfy the criterion of Rule 23(b)(2) because they challenge defendants' actions on grounds applicable to the class as a whole, for which they seek only declaratory and injunctive relief. Fed. R. Civ. P. 23 (b)(2).

**A. The Proposed Class Meets the Requirements of Rule 23(a)**

Under Rule 23(a):

> One or more members of a class may sue or be sued as representative parties only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

All four of these requirements– numerosity, commonality, typicality, and adequacy of representation– must be present in order for a class to be certified. Fed. R. Civ. P. 23.

**1. Numerosity**

As stated above, class certification is permitted under Rule 23(a) if the class is "so numerous that joinder of all members is impracticable." But numerosity is not a function of mere numbers. *Robidoux,* 987 F.2d at 936. The numerosity requirement requires "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). The Rule is concerned with the practical difficulties and litigational hardships that individuals would face if not permitted to litigate as a class. *Robidoux*, 987 F.2d at 936; *see also Familienstiftung v. Askin*, 178 F.R.D. 405, 409 (S.D.N.Y. 1998); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508 (S.D.N.Y. 1996). Furthermore, as the Second Circuit has cautioned, numerosity merely requires a showing that joinder is impracticable, and "[i]mpracticable does not mean impossible." *Robidoux*, 987 F.2d at 935.

Although conclusory allegations that joinder is impracticable may not prove numerosity, *see id.*, courts have identified a number of factors that are relevant to the feasibility of litigation in the absence of class certification, including: (i) the size of the class; (ii) whether the number of class members is stable or fluctuating; (iii) requests for prospective injunctive relief that would implicate the rights of future class members; (iv) the class members' ability to institute individual suits (including considerations of financial resources, personal challenges inhibiting access to the courts, and any fear of retaliation); and (v) concerns of judicial economy arising from the avoidance of a multiplicity of actions. *Id.* at 936; *see also Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 120 (S.D.N.Y. 2001); *Ansari v. New York University*, 179 F.R.D. 112, 114-15

(S.D.N.Y. 1998); 1 Newberg on Class Actions § 3:6 (4th ed. 2005). These enumerated factors are addressed in turn:

**i. size of class**

At the class certification stage, no precise quantification of the number of class members is necessary; rather, "courts can make common sense assumptions to support a finding of numerosity." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 552 (S.D.N.Y. 1995). At the time this action was filed, plaintiffs' counsel had identified 13 members of the putative class then in residence at Kirby. *See* C. ¶ 4. These persons were identified by, first, reviewing the census of Kirby residents that Kirby provides to MHLS on a regular basis (known as the "Alpha Report."). This list includes the name, date of birth, social security number, and date of admission for every patient at Kirby. The list also includes "Legal Status Codes," which specify the statutory basis for each patient's retention. MHLS assumed that all patients designated with codes 52 and 53 were members of the putative class, as these are the designations for patients committed under N.Y. C.P.L. § 730.40. Thereafter, MHLS reviewed the legal files of all patients designated with codes 20 and 21: patients civilly retained at Kirby. Because not all civil patients at Kirby originally entered on § 730.40 status, as required to come within the ambit of the class defined above, MHLS identified those of the code 20 and 21 patients who are members of the class by looking at each patient's order of retention. Based on this procedure, MHLS identified approximately 13 members of the class at Kirby at the time this suit was filed; one

month later, on March 4, 2005, the class numbered approximately 18.[2]

No particular minimum number of plaintiffs is required to maintain a suit as a class action. However, if the size of the class exceeds forty plaintiffs, a presumption is raised that joinder is impracticable. *Robidoux*, 987 F.2d at 935 (citing 1 Newberg on Class Actions § 3:05); *Consolidated Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (existence of 40 or more prospective class members raises a presumption that numerosity is satisfied). Plaintiffs here do not qualify for this presumption. Nevertheless, the presumption is not a requirement. Indeed, it is not uncommon for courts to certify smaller classes when other factors raise practicablity concerns. *See, e.g.*, *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (certifying class of fourteen people where the relief sought was injunctive and declaratory); *Clarkson v. Coughin*, 145 F.R.D. 339, 346 (S.D.N.Y. 1993) (certifying subclass of seven deaf female prisoners); *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (certifying class of sixteen members in action brought by present and future tenants of housing authority where numerous individuals would be affected in the future); *Cross v. Nat'l Trust Life Ins. Co*, 553 F.2d 1026, 1030 (6th Cir. 1977) (certifying seven member class); *Dale Elecs., Inc. v. R.C.L. Elecs.*, Inc., 53 F.R.D. 531 (D.N.H. 1971) (certifying class with thirteen members); *Bublitz v. E.I. Du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (certifying class of seventeen members); *Crenshaw v. Maloney*, 1976 WL 13311 (D. Conn. 1976) (certifying class

---

[2]These figures are approximations because they do not take into account patients designated code 99, which means that some legal action or change in legal status is pending. Because code 99 does not distinguish civil patients or § 730.40 patients from the rest of the Kirby population, it is impossible to tell from the list which code 99 patients might be members of the class.

with sixteen members); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (certifying

class of eighteen members); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375

F.2d 648, 653 (4th Cir. 1967) (certifying class of eighteen members).  As one court has

explained, "[w]here the class is not so numerous . . . the number of class members does not

weigh as heavily in determining whether joinder would be infeasible."  *Jordan v. County of Los

Angeles*, 669 F.2d 1311 (9th Cir. 1982).

        Here, although plaintiffs' class do not qualify for the presumption of numerosity, the

exact number of class members should weigh less heavily than other practical considerations.

Indeed, in each of the cases certifying small classes listed above, other factors, including the

transitory nature of the class, the injunctive or declaratory nature of the relief sought, or the

challenges plaintiffs would face in instituting individual suits were found to outweigh any

reservations caused by the relatively small number of persons involved.  As in these cases, this

Court should find that despite the relatively small number of individuals affected by the

challenged policy, joinder is impracticable and numerosity is satisfied.

**ii. transitory nature of class**

        Joinder may be impracticable when a plaintiffs' class is by nature transitory or subject to

fluctuation.  *See Arthur v. Starrett City Assoc.*, 98 F.R.D. 500, 505-06 (E.D.N.Y. 1983); *Folsom

v. Blum*, 87 F.R.D., 443, 445 (S.D.N.Y. 1980). "The fact that the population [of putative class

members] is constantly revolving establishes sufficient numerosity to make joinder of the class

members impracticable."  *Andre H. v. Ambach*, 104 F.R.D. 606, 611 (S.D.N.Y. 1985); *see also

Comer v. Cisneros*, 37 F.3d 775, 800 (2d Cir. 1994) (certifying class of residents in housing

8

discrimination action); *Arrango v. Ward*, 103 F.R.D. 638, 640 (S.D.N.Y. 1984) (certifying class of all current and future pretrial detainees); *Abdul-Malik v. Coombe*, 1996 WL 706914 (S.D.N.Y. 1996) (certifying class of Muslim prison inmates).

Where a class is fluctuating, class certification may serve to preserve claims for court review that would otherwise become moot during the pendency of an action. This is because class certification generally serves to preserve a claim for further review even where the named plaintiffs' claims have become moot. *See Comer*, 37 F.3d at 798. Use of the class certification device thus serves to avoid problems of mootness that might otherwise prevent court review of harms to a fluctuating class. *See Hirschfeld v. Stone*, 193 F.R.D. 175, 184 (S.D.N.Y. 2000) ("[B]ecause of the transitory nature of the class members, class certification will avoid any mootness issues that could otherwise arise if an individual's claims became moot.") In short, certification is appropriate where membership in the class is fluid because the harms alleged are "capable of repetition, yet evading review." *Arrango*, 103 F.R.D. at 640 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110-11 (1975)); *see also Jackson v. Foley*, 156 F.R.D. 538 (E.D.N.Y. 1994) (certifying class where defendant's own actions created risk of mootness of plaintiffs' claims). "In fact, it is often the invocation of class certification that preserves the merits of the controversy for appellate review." *Comer,* 37 F.3d at 797.

This is a case in which "the harm remains constant [while] those who suffer from the harm often fluctuate or change identity." *Id*. The ongoing nature of the challenged practice makes the number and identity of class members likely to change in the course of the action. Given the patterns of patient movement at Kirby, additional individuals will come into the class

9

in the course of this suit, while other individuals may move out of it due to changes in their legal status.  For example, in the 30-day period between February 3, 2005, and March 5, 2005, at least two members of the class were moved out of Kirby to other placements by OMH.  In the same time period, at least two persons were converted from § 730.40 status to § 9.33 status, subjecting them to the harm alleged in the complaint, while approximately six new patients entered Kirby on § 730.40 status, bringing them within the ambit of the class.[3]  Because the composition of the class is fluid, class certification is necessary to avoid harm to future members of the class.

### iii.  nature of relief sought

The Second Circuit considers a request for declaratory or injunctive relief to be a factor favoring a finding of numerosity, given that such requests inherently implicate the rights of future class members.  *Robidoux*, 987 F.2d 931, 935-36; *see also Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) ("[T]he Second Circuit has relaxed the numerosity requirement where the putative class seeks declaratory and injunctive relief pursuant to Rule 23(b)(2)."). Generally, courts are more likely to certify small classes when the sole relief sought in injunctive or declaratory.  *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 FRD 251, 256 (S.D. Iowa 2001); *see also* 1 Newberg on Class Actions § 3:6 (4th ed. 2005).  Here, because the sole requested relief is declaratory and injunctive and implicates the rights of unascertainable future class members, this factor weighs in favor of a finding of numerosity.

### iv. plaintiffs' ability to institute individual suits

---

[3]These numbers are based on comparisons in the Alpha Reports for the two dates.

In determining whether the numerosity requirement has been satisfied, a court may consider various indicia of the class members' ability to institute individual lawsuits, including such considerations as their financial resources and educational background.  *Robidoux*, 987 F.2d at 936; *Pyke v. Cuomo*, 209 F.R.D. 33, 41 (N.D.N.Y. 2002); *Karen L. v. Physicians Health Servs., Inc.*, 202 F.R.D. 94, 100 (D. Conn 2001) (concluding that "the limited financial and educational status" of the proposed class members attested to the impracticality of joinder). Courts have found that when class members are poor or unaware of their rights, joinder may be impracticable due to plaintiffs' inability to initiate suit on their own.  *Glover v. Crestwood Lake Section 1 Holding Corps.*, 746 F.Supp. 301 (S.D.N.Y. 1990) (certifying class of residents in housing discrimination action) (citing *United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976)); *Boulet v. Cellucci*, 107 F.Supp.2d 61 (D.Mass 2000) (certifying class of mentally disabled Medicaid recipients).  Courts have also found support for class certification in the fact that incarcerated or institutionalized individuals lack sufficient access to legal information.  *See Clarkson v. Coughin*, 145 F.R.D. 339, 346 (S.D.N.Y. 1993) (certifying subclass consisting of seven deaf female prisoners, along with subclass of forty-nine deaf male prisoners); *Abdul-Malik v. Coombe*, 1996 WL 706914 (S.D.N.Y. 1996) (certifying class of prisoners); *Alston v. Coughlin*, 109 F.R.D. 609 (S.D.N.Y. 1986) (same); *Arrango v. Ward*, 103 F.R.D. 638, 640 (S.D.N.Y. 1984) (certifying class of pretrial detainees).

At least one court has specifically recognized that psychiatric illness poses a particular challenge to individuals' ability to institute legal actions.  *See Caroline C. by Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) (citing class members' psychological problems and lack of

legal sophistication in support of finding that joinder was impracticable). Like the class certified in *Caroline C.*, the plaintiffs here face particular challenges to instituting individual lawsuits as a result of the mental illnesses that are the basis for their commitment to Kirby. Furthermore, the rigorous schedule of treatment programming that these patients engage in at Kirby, while beneficial toward treating their illnesses, presents a practical obstacle to the patients' undertaking time-consuming individual litigation.

Impracticability of joinder may also be found where potential class members could be deterred from initiating suit on an individual basis for fear of reprisal. *Scott v. Aetna Servs.*, *Inc.*, F.R.D. 261, 267 (D. Conn. 2002) (considering evidence that potential class members feared reprisal in holding that numerosity requirement for class certification was satisfied); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001) (considering class members' fear of reprisals from employer in determining that numerosity requirement had been satisfied); *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 89 (E.D.N.Y. 1989) (holding that the numerosity requirement was satisfied "[s]ince here a number of putative members are current employees, the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable."). These plaintiffs may be deterred from bringing suit individually against OMH and Kirby because these entities have the power to take reprisal action against them. Patients recognize that the Kirby personnel wield immense power to control the quality of their lives at Kirby and to determine any possibility of their release from Kirby. Regardless of any *actual* likelihood of reprisal, patients may be fearful of initiating individual suits out of concern for the possible consequences.

12

For all of these reasons, the personal challenges that these plaintiffs would face in instituting individual suits– including the fact of their mental illnesses, their confinement in a secure psychiatric facility, and their possible fear of reprisal by Kirby personnel– weigh in favor of a finding that joinder is impracticable.

**v.  judicial economy**

The Supreme Court has observed that "efficiency and economy of litigation . . . is a principle purpose of the [class action] device."  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982) (citation omitted).  Concerns of judicial economy must be taken into account in determining whether the numerosity requirement has been achieved.  *Robidoux*, 987 F.2d at 936.  There is no "necessity for encumbering the judicial process with 25 lawsuits if one will do."  1 Newberg on Class Actions § 3:6 (*citing Philadelphia Elec. Co. v. Anaconda Brass Co.*, 43 F.R.D. 452 (E.D. Pa. 1968)).

Here, it is comparatively more efficient to proceed by means of a single class action, rather than in a series of individual suits.  All plaintiffs assert identical constitutional claims, and because there are no claims for damages, this Court will not be burdened with the task of determining relative harms or individual injuries.  Furthermore, the New York statutory scheme governing involuntary psychiatric care in New York state consists of a relatively complicated series of interconnected laws. Because this is a specialized area in which few federal judges are likely to have any prior familiarity, it is economical to confine this constitutional challenge to a single lawsuit.

In sum, classes similar in size to the class proposed here have been certified by other

13

district courts.  Because plaintiffs' mental illnesses, coupled with the fact that they might be

deterred by fear of reprisal, inhibit their ability to institute individual litigation, certification of

the class is necessary for plaintiffs to be able to vindicate their rights.  Further, because the class

is transitory and plaintiffs seek injunctive and declaratory relief, certification would serve the

interests of future class members and avoid mootness problems.  Finally, judicial economy is

served by resolving the constitutional challenges posed by this lawsuit in a single action, rather

than a series of individual suits.  Taking the circumstances of the case as a whole, joinder of the

plaintiffs in this class is impracticable, and numerosity is satisfied.


**2. Commonality**

Rule 23(a)(2) requires that the Court certify a class action where "there are questions of

law and fact common to the class."  The commonality requirement may be met when individual

circumstances of class members differ, but "their injuries derive from a unitary course of

conduct."  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *see also Trief v. Dun &

Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).  A single common question may be

sufficient to satisfy the commonality requirement. *See German v. Federal Home Loan Mortgage

Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995).  "The critical inquiry is whether the common

questions are at the 'core' of the cause of action alleged."  *Labbate-D'Alauro v. GC Servs. Ltd.

Pshp.*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).  *Accord In re "Agent Orange" Prod. Liab. Litig.*,

818 F.2d 145, 166-67 (2d Cir. 1987).  Courts may assume commonality where plaintiffs seek

certification of an injunctive class to remedy alleged constitutional wrongs.  *Nicholson*, 205

14

F.R.D. at 98.

The claims of the named plaintiffs and those of the members of the putative class arise from a common wrong: the fact that the state is not required to prove their need for retention in a secure facility, but may retain them in a secure facility nonetheless. The only question at issue here is the common question of law: whether the statutory scheme deprives patients of their rights to substantive and procedural due process and equal protection, as guaranteed by the United States Constitution. Furthermore, because the sole relief sought is declaratory and injunctive, the common questions to be decided are the sole issues in this case; it presents no question of individual damages. In light of these considerations, the commonality requirement is satisfied.

**3. Typicality**

A class representative's claims are "typical" under Rule 23(a)(3), where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (citation omitted).

15

Here, the named plaintiffs' claims are typical of the claims of the members of the putative class. The named plaintiffs are all involuntary psychiatric patients in OMH custody. Each plaintiff entered Kirby upon OMH's designation, with no attendant procedure addressed to the question of heightened dangerousness. Each named plaintiff is subject to continuing retention at Kirby, pursuant to MHL § 9.33, with no attendant showing that Kirby's restrictive setting is necessary to the purposes underlying his commitment. The claims of the named plaintiffs and of the putative class members arise from the same conduct on the part of the defendants and are based on the same legal theories.

To the extent that there are differences in the particular procedural posture of each named plaintiff's continuing involuntary commitment, these differences are indicative of the slightly different effect that the unconstitutional procedures complained of can have in different cases. Plaintiff Michael B. was the subject of the Appellate Division ruling that first gave notice to plaintiffs that New York's statutory scheme deprived them of important procedural protections and deprived them of opportunities for transfer to the state's less-restrictive facilities. *See Consilvio*, 307 A.D. at 852-53. Despite the testimony of his treating psychiatrists at both his 2002 § 9.33 hearing and his 2004 § 9.33 hearing that Mr. B.'s illness could adequately be managed in a non-secure setting, OMH has consistently opposed Mr. B.'s transfer from Kirby and has not authorized such a transfer to occur. C. ¶¶ 29-31. Accordingly, Mr. B. was still being housed at Kirby at the time this suit was filed.[4]

---

[4] OMH has continued to oppose Mr. B.'s transfer to a non-secure facility in spite of the consistent testimony of his treating doctors that non-secure placement would be appropriate. At Mr. B.'s 2004

By contrast, plaintiff Eugene C. waived his right to a hearing on the hospital's § 9.33 retention application. C. ¶ 34. Although Mr. C.'s doctors at Kirby acknowledged that he "ha[d] not demonstrated dangerous behavior since his admission to Kirby," the question of transfer would not have been available at any hearing, in light of the *Consilvio* decision. C. ¶¶ 33-34. Thus, in waiving his right to a hearing, Mr. C. acknowledged his continuing need for inpatient psychiatric treatment, but not his need to remain in a secure facility. *Id.* In Mr. C.'s case, like that of all members of the plaintiff class, Kirby has never alleged or proved that he suffers from a dangerous mental disorder requiring secure retention. *Id.*

At the start of this litigation, plaintiff Eddie L. was still on § 730.40 status. C. ¶ 37. Like all § 730.40 patients who do not regain competency to face the criminal charges against them within 90 days of admission to Kirby, Mr. L. was converted to civil status and retained under § 9.33 thereafter. C. ¶ 38. Mr. L.'s rights were infringed from the moment that the hospital sought his retention under § 9.33 without pleading or proving that he suffered from a dangerous mental disorder requiring secure retention.

What these named plaintiffs share with one another and with the other class members is that their need for secure retention has never been proven; the hospital has never made a showing that they suffer from a dangerous mental disorder. Following the decision of an

---

hearing, OMH's attorney initially stipulated to Mr. B.'s transfer based on his doctor's testimony, but then attempted to withdraw that agreement later during the proceedings and brought further proceedings to challenge the stipulation in both the hearing court and the Appellate Division, which are currently pending. While Mr. B. has temporarily been transferred to a non-secure facility pursuant to the stipulation, it is unclear at the present time whether that agreement will ultimately be upheld. In any event, he remains in the custody of OMH, which, under the statutory scheme here challenged, has unfettered discretion to direct his placement in a secure or a non-secure facility.

anonymous person within OMH's administrative offices that these plaintiffs should be housed in a secure rather than a non-secure facility, these plaintiffs have never been afforded a meaningful opportunity to challenge that security placement. Indeed, OMH has never even been required to prove that the decision to continue these plaintiffs in secure retention based on any substantive legal standard. Because these common facts form the basis of the constitutional violations alleged in this litigation, the plaintiffs have demonstrated sufficient commonality to proceed as a class.

**4. Adequacy of Representation**

The named plaintiffs must also show that the proposed action will fairly and adequately protect the interests of the class by demonstrating that the interests of the named plaintiffs are not antagonistic to the proposed class members. *See* Fed. R. Civ. P. 23(a)(4); *Banyai v. Mazur*, 205 F.R.D. 160, 164 (S.D.N.Y. 2002). To do so, proposed class representatives must demonstrate that they have no interests that are antagonistic to the proposed class members. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see also Robinson*, 267 F.3d at 170 (noting Rule 23(a)(4) requires an "absence of conflict" between the named representatives and the class members, as well as "vigorous prosecution").

As noted above, the named plaintiffs have suffered the same harm as all other plaintiffs in the putative class. All have been subjected to the same deprivation of constitutional rights under the same unconstitutional state statutory scheme. Because there is no question of damages in this case, the plaintiffs have no potential interests that are antagonistic to one another.

18

Because the plaintiffs stand together with regard to the vindication of their constitutional rights, adequacy of representation has sufficiently been established.

**B. The Proposed Class Meets the Requirements of Rule 23(b)(2)**

Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." This rule does not require that all members of the class be aggrieved by the challenged conduct, but proponents of a Rule 23 (b)(2) class must be able to demonstrate that the "conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class," and that the entry of declaratory or injunctive relief would remove a barrier or impediment common to the class. These elements are met in the present case. As discussed above, plaintiffs allege violations of the federal Constitution and are asking for injunctive and declaratory relief, as appropriate. Such relief is available on a class-wide basis to enjoin the failure of the OMH and Kirby to comply with constitutional requirements. For these reasons Plaintiffs have met the requirements of Rule 23(b)(2).

**II. MENTAL HYGIENE LEGAL SERVICE, THE PROPOSED CLASS COUNSEL, WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF ALL CLASS MEMBERS AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 23(g)**

As noted in the Advisory Committee's Notes to the 2003 Amendments to the Federal Rules of Civil Procedure, "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision." Thus, adequacy of class counsel is now properly considered under

19

Rule 23(g), rather than Rule 23(a)(4).  If certification is granted, Rule 23(g) provides that the court must appoint class counsel. To that end, the court must consider the following: "[(1)] the work counsel has done in identifying or investigating potential claims in the action, [(2)] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [(3)] counsel's knowledge of the applicable law, and [(4)] the resources counsel will commit to representing the class."  Rule 23(g)(1)(C)(i). *See also Drexel Burnham Lambert Group*, 960 F.2d at 291 ("Class counsel must be qualified, experienced and generally able to conduct the litigation.") (quotation marks and citation omitted). The court may consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Rule 23(g)(1)(C)(ii).

Plaintiffs' counsel, Mental Hygiene Legal Service (MHLS), is a state agency mandated pursuant to M.H.L. §47.03 to provide legal services and assistance to all patients in the custody of OMH.  Because it is statutorily mandated "[t]o initiate and take any legal action deemed necessary to safeguard the right of any patient to protection from abuse or mistreatment," M.H.L. § 47.03(e), it would be reasonable to expect MHLS to fairly and adequately represent the interests of the class.   MHLS has done extensive work identifying the legal claims asserted in this action and developing legal theories of the case.  Furthermore, MHLS has initiated class actions on behalf of its clients in the past, when circumstances rendered such steps to be necessary.  Finally, as an agency mandated to safeguard the rights of psychiatric patients in New York State, MHLS has both the knowledge relevant to this specialized area of the law and the

institutional resources to devote to this action.  Because MHLS satisfies the requirements of Rule 23(g), this Court should formally appoint MHLS as class counsel.

## CONCLUSION

Plaintiffs have demonstrated that they meet the requirements of numerosity, commonality, typicality and adequacy of representation as defined in Fed. R. Civ. P. 23(a). Furthermore, they demonstrate that they meet the requirements of Fed. R. Civ. P. 23(b)(2). Additionally, plaintiffs' counsel will fairly an adequately represent the interests of class members, as required under Fed.R.Civ.P. 23(g).  For these reasons, Plaintiffs respectfully ask this court to grant their request for class certification.

Dated: New York, New York
          April 21, 2005

MARVIN BERNSTEIN, Director
Mental Hygiene Legal Service, First Dept.
  S/
By: SADIE ZEA ISHEE (SI-9540)
Staff Attorney
SADIE ZEA ISHEE                    60 Madison Avenue, 2nd Floor
STEPHEN J. HARKAVY              New York, New York 10010
          of Counsel                      Phone:  (212) 779-1734

21